

IN THE
TENTH COURT OF APPEALS

No. 10-15-00230-CV

IN THE INTEREST OF V.E., A CHILD

From the 414th District Court
McLennan County, Texas
Trial Court No. 2014-273-5

MEMORANDUM  OPINION

Raising two issues, Appellant R.W. appeals the trial court's termination of her parental rights to her daughter V.E. after a bench trial.  We begin with Appellant's second issue, which asserts that the trial court erred in granting an extension of less than 180 days of the statutory dismissal deadline under Family Code subsection 263.401(b), which allows the trial court to extend the dismissal deadline if the movant shows "extraordinary circumstances [that] necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child."  TEX. FAM. CODE ANN. § 263.401(b) (West 2008).

The trial court held a hearing on Appellant's motion for extension on January 29, 2015. Appellant's counsel requested a full 180-day extension based on Appellant's alleged progress. The Department opposed an extension. Terri Schroeder, Appellant's therapist, testified at the hearing. She said that the issues being addressed in Appellant's therapy were "her former drug use, her low self-esteem, parenting issues, and some very, very poor decision making in the past." Appellant had been working with Schroeder since the end of October 2014. Schroeder described the progress Appellant was making as being able to acknowledge bad choices in men, learning some "parenting things," the reasons for her drug use, and how to avoid relapse in the future. Schroeder thought that Appellant was grasping the situation that caused V.E. to be in the Department's care. Schroeder was optimistic that Appellant could become a protective parent, and she also believed that, given time, Appellant would become a better parent. Schroeder had recommended that Appellant be allowed more time with V.E., provided she remained drug and alcohol-free.

Schroeder had received a copy of Dr. Shinder's psychological report on Appellant and agreed that it was not favorable to Appellant. Schroeder had had only one appointment with Appellant since receiving Dr. Shinder's report, but they had begun addressing matters of concern in the report. Schroeder's opinion of the psychological report was that Appellant had "tried to make herself look good, [s]o most of it was invalid." Schroeder explained that internal scales in the test reflected that Appellant was not being completely honest, which tended to reflect that she was trying to avoid saying anything bad about herself. Schroeder felt she could address this issue with Appellant.

Appellant testified that she had been released from prison on August 5, 2014 and claimed to have gone through four different jobs since her release. Appellant said that she had completed all of her family service plans, parenting classes, and drug classes "and all of them that CPS has asked me to complete." She also claimed that she had been clean on all of her drug tests. Although some visits with V.E. had been postponed due to illness, Appellant claimed she had made all her visits. Appellant was asking for the extension so she could work the services and try to get back with V.E.

On cross-examination, Appellant admitted to having her parental rights terminated to two other children and to relinquishing her rights to yet two more children. She had gone to prison when V.E. was six weeks old, and she had not seen V.E. until her release from prison a year and a half later. Appellant acknowledged that she had left V.E. in the care of C.E., V.E.'s father, when she went to prison. She said that she was aware of C.E.'s lengthy criminal history but that she was not aware of his previous involvement with CPS.

Sara Hopkins McCormick, the case supervisor, testified that when the case was opened, the Department was aware that Appellant had previously had her parental rights terminated regarding her other children, but there was a question as to the records that would have reflected these aggravating circumstances. This question had subsequently been resolved, and it had been determined that Appellant's rights had in fact been terminated for engaging in conduct or placing a child in a dangerous situation, as well as for failure to comply with court-ordered service plans.

Hopkins McCormick described a ten-year pattern of Appellant's involvement

with the Department: "The patterns amongst all of the history are the same. She's incarcerated. She's engages in high risk behavior, drug use; gets incarcerated; has a baby, does services. And at this point, there's not anything that would suggest to us that that pattern behavior would change." Hopkins McCormick opined that it was in V.E.'s best interest to remain in the foster home that she had been in since she was six weeks old. She also disagreed with Appellant's current claim of stability: "Since her release from incarceration, she's roughly had six different jobs. She had an arrest for driving without a license in October 2014. She initiated therapeutic services in October. She participated in a psychological evaluation in December 2014 that suggested that she was an unacceptable parent and that she needs to participate in protective parenting." Hopkins McCormick said that the Department opposed an extension because it was not in V.E.'s best interest.

The trial court granted a sixty-day extension "[i]n light of the testimony and kind of where we are at this exact moment in this case." We review a trial court's denial of an extension request under section 263.401(b) for an abuse of discretion. *In re D.M.,* 244 S.W.3d 397, 416 (Tex. App.—Waco 2007, no pet.) (op. on reh'g); *see also In re A.J.M.,* 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied); *In re D.W.,* 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008), *pet. denied per curiam,* 260 S.W.3d 462 (Tex. 2008). "The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *A.J.M.,* 375 S.W.3d at 604. A parent's incarceration is generally considered to be the parent's fault and not an extraordinary

circumstance. *See id.* at 603-05; *see also In re M.G.D.,* 108 S.W.3d 508, 512 (Tex. App.—

Houston [14th Dist.] 2003, pet. denied).

> To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

> An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.

*D.W.,* 249 S.W.3d at 647 (citations omitted).

Based on the record before the trial court, we cannot say that it abused its discretion in denying Appellant's motion for a 180-day extension of the statutory dismissal deadline and instead granting only a sixty-day extension. We overrule Appellant's second issue.

In her first issue, Appellant contends that the evidence is legally insufficient to support the trial court's best-interest finding.[1]  In a proceeding to terminate the parent-

---

[1] A legal sufficiency review in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *In re J.F.C.,* 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal sufficiency review).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should

child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).[2] The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976); *Swate,* 72 S.W.3d at 766. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Spangler v. Texas Dept. of Prot. & Reg. Servs.,* 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.).

The trial court found that termination of Appellant's parental rights was in the child's best interest. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical

---

disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*Id.* at 266.

[2] The trial court found the four following predicate violations: (1) Appellant knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being (Family Code subsection 161.001(1)(D)); (2) Appellant engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being (Family Code subsection 161.001(1)(E)); (3) Appellant had her parent-child relationship terminated with respect to another child based on a finding that her conduct was in violation of subsection 161.001(1)(D) or (E) (Family Code subsection 161.001(1)(M)); and (4) Appellant failed to comply with provisions of a court order specifically establishing actions necessary for the parent to obtain return of the child (Family Code subsection 161.001(1)(O)).

needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

Hopkins McCormick, the first witness at the March 30, 2015 trial, reviewed Appellant's history with the Department. This history went back to 2001 and reflected a pattern of penal offenses and drug use that resulted in Appellant's parental rights being terminated to four other children. The case involving V.E. was opened in August 2013 with an initial report indicating that V.E. had suffered a burn and did not get necessary medical treatment. It was learned that C.E., the father of V.E., was a member of a criminal gang and that Appellant was incarcerated on a drug charge. Appellant had begun serving her sentence when V.E. was about six weeks old and had been released when V.E. was fifteen months old. Hopkins McCormick again testified to Appellant's history

regarding Department services, as well as her lack of residential and employment stability. To the Department's knowledge, Appellant was still married to C.E.

As of the time of trial, Appellant had made only one visitation in six opportunities since December 29, 2014. Appellant was required to pass a drug test before being allowed visitation, and to Hopkins McCormick's knowledge, Appellant had not submitted to the drug testing. Appellant had also not been consistent in attending therapy sessions, missing three of five sessions scheduled in February 2015.

Appellant testified that she knew that, when she married C.E. in 2012, he had recently been released from federal prison. She was aware of two of his arrests for theft, but not for drugs, because she had been "already locked up at that point." Appellant agreed that C.E. was not a fine, upstanding citizen. Regarding the theft charge that led to her incarceration shortly after V.E. was born, Appellant agreed that she was still not owning up to the offense, claiming that it had been a "miscommunication." She also agreed that it was her plan to leave the baby with C.E., whom she knew to be a convicted federal drug felon, when she went to prison. Appellant volunteered that C.E.'s mother would be helping with the baby. Appellant explained that she missed visitation with V.E. during the last three months because she had the flu, the child had also been sick, and she had conflicts with her work schedule. She agreed with the proposition that she was asking the court to trust her to prioritize her work schedule for V.E.'s benefit, even though she had not yet demonstrated her ability to do so. Appellant admitted to not having a driver's license and to her recent arrest for driving with an invalid license. Appellant said that she had had a number of jobs since she got out of prison, but she

admitted that she had not provided the Department with proof of employment for her two latest jobs.

Appellant felt that her life was now stable in that she had remained in the same residence and was doing what she needed to do for CPS. She admitted, however, that she had only visited V.E. a couple of times in the last three months. Asked about her inability to provide structure for any of her children, Appellant said she had not yet been given the opportunity. Appellant said the she thought she had strengths as a mother, but she did not know what they were. She also felt that she currently did not have any weaknesses as a mother. Appellant was also of the opinion that she and V.E. had bonded "the minute that little girl laid eyes on me." Although Appellant had provided no financial support for V.E., she had provided clothes and toys. Appellant testified that she currently was living in a house owned by William Knight. Appellant had identified Knight on a Child Caregiver Resource Form as being V.E.'s stepfather, but when confronted with her prior testimony that Knight was just a friend, Appellant admitted to lying to CPS.

Amanda Aguilar, V.E.'s CPS caseworker, testified that V.E. was doing well in foster care. The Department was working toward the foster family adopting V.E., which Aguilar believed to be in V.E.'s best interest. Appellant had been mailed a copy of the service plan before she got out of prison, and she had been scheduled for a psychosocial evaluation on September 29, 2014, but she missed the appointment. She eventually underwent the evaluation on October 28, and it led to a recommendation for a full psychological evaluation, which was completed on December 13. Appellant was initially

recommended for protective parenting classes on September 15, but Appellant failed to follow through, requiring a second referral on March 4, 2015. Appellant's therapy sessions began October 29, 2014, and initially she was "pretty consistent" in her attendance, but she missed five of six sessions scheduled in January and February of 2015.

V.E.'s foster father testified at length regarding his family's experience with V.E., the progress she had made since coming into their home, and their desire to adopt V.E.

Dr. James Shinder, a psychologist, conducted a psychosocial assessment of Appellant in October 2014. In conducting the evaluation, Dr. Shinder obtained record information on Appellant and also interviewed her. Comparing this information, Dr. Shinder noted discrepancies and contradictions between record information and information that Appellant self-reported. He said that the testing itself revealed Appellant's tendency to present herself favorably. Dr. Shinder described Appellant's issues at length, which the Department's attorney summarized as "someone who has this type of a personality, where they want to present themselves to be better than they are, present their circumstances to be better than they are … ." Dr. Shinder characterized the condition as a "fixed pattern of [characterological] problem that has demonstrated itself from 2003 through the present time." Dr. Shinder said that it would be easy for this kind of personality to convince a stranger that everything was going great in their life.

Although Appellant had convinced herself that she was now fully in control over circumstances in her life and that she was fully capable of raising her daughter, Dr. Shinder did not see any significant change and had no reason for optimism. Dr. Shinder characterized Appellant's personality to be one of a "masterful manipulator" and

considered individual therapy to be probably the least effective modality for persons with this type of problem. Regarding Appellant's relationship to V.E., Dr. Shinder stated that Appellant did not really know V.E.: "I'd almost have to describe her as being a – a stranger or a visitor in the child's life." Dr. Shinder did not think that it was in V.E.'s best interest to go back with Appellant because "[t]he risk is too great. There's still too many unresolved problems. And some of these problems may not be resolved."

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's best-interest finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant's parental rights was in V.E.'s best interest. The evidence is legally sufficient on the best-interest finding, and we overrule Appellant's first issue.

Having overruled both issues, we affirm the trial court's order of termination.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed December 17, 2015
[CV06]

