OPINION ON APPELLANT’S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION[1]
TERRIE LIVINGSTON, Chief Justice.
After granting appellant’s motion for rehearing and motion for en banc reconsideration, we withdraw our prior opinion and judgment and rewrite this court’s opinion to address appellant’s first issue on its merits.
Appellant appeals from the trial court’s judgment terminating his parental rights to daughters A.J.M. and E.A.M. In four issues, he complains that the trial court erred by denying his motion to extend the dismissal deadline and that the evidence is factually insufficient to support the termination findings. We hold that appellant did not forfeit his issue on appeal regarding the trial court’s denial of his motion to extend the dismissal deadline but that the trial court did not abuse its discretion in denying his motion. We also hold that the evidence is factually sufficient to support the endangerment and best interest findings. We therefore affirm the trial court’s judgment.
I. The trial court did not abuse its discretion by denying appellant’s motion to extend the one-year dismissal deadline.
In his first issue, appellant argues that the trial court erred by denying his motion to extend the mandatory statutory one-year dismissal date. Under former section 263.405© of the family code, the law in effect when the trial court rendered this judgment, appellant was required to raise this issue in his statement of points.[2] However, because we have held former section 263.405© to be facially invalid, we address his issue.[3]
Appellant argues that the trial court erred when it denied his motion to extend the dismissal date under family code section 263.401. See Tex. Fam.Code Ann. § 263.401(a), (b) (West 2008). In our original opinion, we incorrectly held that appellant had forfeited this issue because he had not included this particular issue in his statement of points on appeal as required under former section 263.405©. In re A.J.M., No. 02-11-00137-CV, 2011 WL 5984540, at *1 (Tex.App.-Fort Worth Dec. 1, 2011, no pet.) (mem. op.); see Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332 (repealed 2011). The holding in our original opinion is incorrect because this court has previously held that former section 263.405® violates the Separation of Powers Clause of the Texas constitution in that it prevents an appellant from pursuing an issue on appeal that has been properly preserved in the trial court; thus, it unconsti *604 tutionally interferes with our constitutionally conferred power to review the issue on the merits on appeal. D.W., 249 S.W.3d at 640, 645. Therefore, we have the power to review this issue on appeal.
Here, appellant moved to extend the dismissal deadline of the underlying termination suit for 108 days because he was still incarcerated in the Parker County jail and would not be released until shortly before the scheduled trial date of February 9, 2011. See Tex. Fam.Code. Ann. § 268.401. He specifically asked that the case be reset to October 7, 2011 so that after his release he could attend the trial and also complete the parenting class and other services required by his service plan.
First, we note that appellant preserved this issue for appeal by bringing his request to the trial court’s attention by written motion dated January 11, 2011. See Tex.R.App. P. 33.1. Furthermore, appellant, properly raised the issue on appeal in his first issue: “The trial court erred by denying appellant’s motion to extend the dismissal date.”
Appellant’s requested extension date of October 7, 2011 is within the 180-day permissible extension when counting from the Monday following the one-year anniversary of any temporary order appointing the Texas Department of Family and Protective Services (the Department) as managing conservator. See Tex. Fam.Code Ann. § 263.401(a). Section 263.401(b) allows the trial court to extend the dismissal deadline if the movant shows “extraordinary circumstances [that] necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child.” Id. § 263.401(b).
At the January 14, 2011 hearing on his motion for continuance, appellant claimed his incarceration had prevented his ability to comply with his service plan and his ability to show his willingness to work to get his children back. He also agreed that their current placement was not harmful and that the children were not readily adoptable at that time. Conversely, the children’s ad litem testified that any delay in termination would delay an anticipated lengthy adoption, that she could not recommend returning the children to the parents regardless, and that incarceration was not an “extraordinary circumstance” justifying extension under the statute.
We review a trial courts decision to grant or deny an extension of the dismissal date under the abuse of discretion standard. D.W., 249 S.W.3d at 647. The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child. Tex. Fam.Code Ann. § 263.401(b). The trial court is further directed to make such findings and include them in any order granting the extension, along with the new trial date and any further necessary temporary orders. Id.
Appellant attended the continuance hearing and the permanency hearing held at the same time, with trial counsel. At the end of the permanency hearing, the trial court found that appellant had “not demonstrated adequate and appropriate compliance with the service plan.” The trial court further declared appellant to be the father of both children and named him a temporary possessory conservator. Moreover, the trial court found the guidelines for possession and access to the children were not in their best interest and granted appellant supervised visitation of one hour per week. Pursuant to section 263.306(a)(13), the trial court set the next *605 dismissal date as April 11, 2011 and confirmed the February 9, 2011 trial date. Tex. Fam.Code Ann. § 263.306(a)(13) (West Supp.2012).
In his brief on appeal, appellant argues that the trial court erred in failing to grant his extension. Appellant had said at the January 14 hearing that he might be released on January 28, 2011 or April 20, 2011 and argued to keep the children in their current placement because they were “not immediately adoptable anyway.” Thus, he contended that his incarceration, the search for a “suitable relative placement,” and continuing the Department’s managing conservatorship was in the children’s best interest.
Notably, the children’s ad litem attorney argued against an extension because of the children’s long-term emotional and developmental needs. Both the ad litem and the Department’s caseworker contended that visits with appellant had actually been detrimental to E.A.M. in particular.
This is all that appellant points to in support of either “extraordinary circumstances” or the children’s alleged “best interest.” The statute’s clear preference is to complete the process within the one-year period. The legislature’s use of the language, “unless the court has commenced a trial on the merits or granted an extension ... the court shall dismiss ...,” is mandatory. Id. § 263.401(a); see In re Tex. Dep’t of Family & Protective Sens., 348 S.W.3d 492, 497 (Tex.App.-Fort Worth 2011, orig. proceeding). Furthermore, when section 263.401(a) is read with section 263.401(b)’s language — -“the court may not retain” — it is clear that the legislature preferred and directed trial courts to complete their state-involved terminations by the one-year anniversary. Tex. Dep’t of Family & Protective Sens., 348 S.W.3d at 497. We have already determined and held that the term “shall” is generally a mandatory term and that the exception in section 263.401(b) must be closely followed. Id. Because the statutory language prefers finality to suit and because we cannot say the trial court abused its discretion in denying appellant’s extension, we overrule appellant’s first issue.
II. The evidence is factually sufficient to support the trial court’s endangerment finding.
In his third issue, appellant contends that the evidence is factually insufficient to support the trial court’s endangerment finding. As we have explained in a similar case,
Endangerment means to expose to loss or injury, to jeopardize....
[[Image here]]
.... Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child’s physical or emotional well-being was the direct result of the parent’s conduct, including acts, omissions, and failures to act. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required.
To support a finding of endangerment, the parent’s conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. The specific danger to the child’s well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child’s birth.... As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child’s physical and emotional well-being.
*606 In re J.W., No. 02-08-00211-CV, 2009 WL 806865, at *4 (Tex.App.-Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (citations omitted).
Even though imprisonment standing alone does not constitute a continuing course of conduct that endangers the physical or emotional well-being of a child, it is a factor that we may properly consider on the issue of endangerment. Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533-34 (Tex.1987); In re M.R., 243 S.W.3d 807, 819 (Tex.App.-Fort Worth 2007, no pet.). The State is not required to show that incarceration was a result of a course of conduct endangering the child; it must show only that incarceration was part of such a course of conduct. Boyd, 727 S.W.2d at 533-34; M.R., 243 S.W.3d at 819. When incarceration affects the parent’s ability to care for his child, to provide safe living conditions, or to ensure her safety and well-being, then such incarceration can be a part of a course of continuing conduct. See M.R., 243 S.W.3d at 819. Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child’s well-being. In re J.T.G., 121 S.W.3d 117, 133 (Tex.App.-Fort Worth 2003, no pet.).
Additionally, a parent’s mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct jeopardizing the child’s physical or emotional well-being. In re M.E.-M.N., 342 S.W.3d 254, 262 (Tex.App.-Fort Worth 2011, pet. denied). Also, even if a parent makes dramatic improvements before trial, “evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of ... irresponsible choices.” In re J.O.A., 283 S.W.3d 336, 346 (Tex.2009). Finally, a factfinder may infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. In re M.M., No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex.App.-Fort Worth Dec. 11, 2008, no pet.) (mem. op.).
Nikki Lepori, the CPS investigator, testified that the first CPS investigation of appellant’s family occurred in August 2007. At that time, A.J.M. was barely three years old, and E.A.M. was about sixteen months old. The allegations were that appellant had sexually abused both little girls. The reporter, whose name Lepori could not recall, had allegedly seen appellant fondle A.J.M. Lepori testified that the allegations were ruled unable to determine because the girls were nonverbal. In the same referral, allegations of neglectful supervision of the children by their mother, E.J., and of physical abuse of A.J.M. by appellant were also raised. The reporter alleged that appellant had hit A.J.M. with his fist, had been seen shaking her, and had left bruises on her back and legs. In October 2008, another report of physical abuse was made. The allegations were ruled out, but a case was opened to provide services for the family. In December 2009, CPS received a report of physical neglect, which was ruled out.
Appellant was arrested and confined in December 2009. The children lived with their mother until her arrest and confinement on March 29, 2010. According to Lepori, soon thereafter, in April 2010, CPS received another report. At that time, both parents were still incarcerated. The girls were living with their paternal grandmother. E.A.M., who was three years old at the time, had been spotted running up and down Bankhead Highway, which Le-pori testified is busy, going door-to-door asking for cigarettes. AJ.M.’s school had reported that she had come to school in *607 the same urine-soaked clothes two days in a row. When Lepori went to the paternal grandmother’s home to investigate these neglect charges, the paternal grandmother gave her a 1999 doctor’s note stating that she was permanently physically and mentally disabled. E.A.M., who had just turned four before the visit, and A.J.M., who was five years old, were unkempt and appeared not to have had baths for several days. Lepori got the impression that they were dressing themselves and taking care of their own hygiene, which, she testified, they were not old enough or mature enough to do. Lepori also noted that the girls were covered in what appeared to be insect bites. CPS removed the children for physical neglect and neglectful supervision.
Lepori answered, “Absolutely,” when questioned whether appellant had engaged in conduct or knowingly placed the girls with persons who engaged in conduct which endangered their physical or emotional well-being. Lepori explained that appellant had chosen to break the law, risking and resulting in his incarceration and inability to care for his daughters and that he had also left them with an inappropriate caregiver, his mother. Lepori also testified that neither the parents nor the paternal grandmother appeared to have taken any steps to meet the children’s developmental and emotional needs.
The girls’ mother, E.J., who voluntarily relinquished her parental rights, admitted that appellant had been arrested during the girls’ lives three to five times and that those arrests had taken him away from them “[ojverall a little.”
E.J. also testified that appellant had told her that he was a registered sex offender and that he had committed the offense when he was fourteen. Appellant was thirty at the time of trial. E.J. did not know who the complainant was. Appellant testified that the complainant had been a twelve-year-old girl. A Parker County Sheriffs Office lieutenant, Mark Arnett, testified that the complainant had been appellant’s mother, and appellant’s adult probation officer testified that appellant had told him that the complainant had been appellant’s mother. Appellant’s mother refused to answer questions about whether appellant had “hurt” her when he was a teenager, claiming her Fifth Amendment right not to testify.
Appellant was in the Texas Youth Commission for the sexually assaultive conduct from 1994 to 2001 and is a registered sex offender. Arnett testified that appellant also had an extensive criminal history. Appellant admitted to psychologist Parnell Ryan that he had been arrested and jailed four or five times. Specifically, appellant told Ryan that he had been arrested for hot checks in 2001 and 2006, evading arrest in 2001, identity theft in 2008, and unlawful possession of a firearm in 2009. Appellant also testified that he pled guilty to harassment in 2007 but that his probation was revoked when he committed identity theft.
Included in the exhibits offered by the Department and admitted by the trial court are judgments of conviction. Petitioner’s Exhibit 2 is a judgment dated June 28, 2010, that indicates that the trial court adjudicated appellant’s guilt and convicted him of obtaining a controlled substance by fraud, sentenced him to five years’ confinement, and awarded credit for time served of approximately four months. That exhibit provides that the offense was committed in October 2003, which was before appellant’s daughters were born. Petitioner’s Exhibit 1 is a judgment of state jail conviction for fraudulent use or possession of identifying information. The judgment provides that appellant committed the offense on February 18, 2009, that he *608 was sentenced to fifteen months’ confinement on June 28, 2010, and that he had received about three months’ credit for time served.
Petitioner’s Exhibit 3 is an October 2009 motion to revoke appellant’s community supervision in yet another felony case of fraudulent use or possession of identifying information on the basis of appellant’s alleged commission of two new state jail felony forgery offenses within a month of being placed on community supervision. Petitioner’s Exhibit 7 is a judgment granting that motion and revoking appellant’s community supervision. The judgment, dated May 21, 2010, provides that the trial court sentenced appellant to serve fourteen months in state jail and awarded him about six months’ credit for time served. The judgment also indicates that the offense was committed on February 18, 2009. Petitioner’s Exhibit 4, a bond recommendation, states that appellant was arrested for being a felon in possession of a firearm on October 18, 2009, after officers found the gun in his home pursuant to a consensual search. Petitioner’s Exhibit 6 is a May 2010 judgment of conviction for the felony offense of unlawful possession of a firearm by a felon. The judgment provides that the offense occurred on September 18, 2009, that appellant was sentenced to three years’ confinement, and that he received credit for time served of about six months. Finally, on April 22, 2010, appellant was found guilty of “Parent Contributing to Nonattendance” regarding AJ.M.’s absences from school and fined $584.00. Appellant was incarcerated at the time.
E.J. testified that she did not realize that appellant was a felon. She admitted that he had had a gun in the house before his most recent arrest.
Appellant’s probation officer testified that appellant has a temper and is sometimes unstable. The probation officer also testified that he did not see appellant as a person who learns from his mistakes and predicted that he would continue to commit crimes. Ryan reported that appellant’s intellectual function was in the low average range. Regarding appellant’s social and emotional functioning, Ryan reported that appellant
presented as someone with a history of antisocial behaviors beginning as an adolescent!,] which appear to not have been addressed!,] bringing about cyclical behaviors with strong consequences. [Appellant] seems willing to place himself in risky situations and practice irresponsible actions which prevent him from consistently meeting life responsibilities. [Appellant] appears able to identify right from wrong, yet his beliefs and values seem self-sabotaging.... [Appellant] has poor awareness of what he has to change in order to prevent himself from being in his current life situation. [Appellant] tends to minimize and justify his problematic behaviors....
.... [Appellant] does not seem to profit from past mistakes. [Appellant] appears to show poor judgment....
Appellant appeared at trial with two black eyes. He had been in a fight with another inmate at the jail. He admitted that he had been incarcerated for about a third of E.AM.’s life. When asked why he chose to continue to break the law, he answered, “People’s got their own way of thinking.” He admitted that he knew that it was a problem for him to have a gun in the house as a felon but contended that he kept the gun anyway because he was a repo man. Later, he testified that he would be able to be a repo man without a gun.
Appellant denied that he or anyone else in the home had ever abused the girls. He admitted that he had left the girls with his mother and E.J. when he went to jail and *609 prison. He testified that he thought his mother was competent to take care of the girls. He also testified that she was the only person he had available to take care of the girls. When asked whether she could handle their behavioral issues as reported by the Department — they were difficult to control, they had nightmares, and they wet the bed — he answered that he did not know. He testified that there were no bug infestations when he lived with his mother.
Applying the appropriate standard of review, see In re H.R.M., 209 S.W.3d 105, 108 (Tex.2006), we hold that the trial court could have reasonably formed a firm conviction or belief that appellant engaged in conduct or knowingly placed his daughters with persons who engaged in conduct which endangered their physical or emotional well-being, and we therefore hold that the evidence is factually sufficient to support termination on that ground. See Tex. Fam.Code Ann. § 161.001(1)(E) (West Supp.2012). We overrule appellant’s third issue.
III. We do not reach appellant’s second issue concerning the trial court’s finding under subsection (Q).
Along with a best interest finding, a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination. In re E.M.N., 221 S.W.3d 815, 821 (Tex.App.-Fort Worth 2007, no pet.). We therefore do not reach appellant’s second issue contending that the evidence is factually insufficient to support termination under subsection (Q). See Tex. Fam.Code Ann. § 161.001(1)(Q).
IV. The evidence is factually sufficient to support the trial court’s best interest finding.
In his fourth issue, appellant contends that the evidence is factually insufficient to support the best interest finding. There is a strong presumption that keeping a child with a parent is in the child’s best interest. In re R.R., 209 S.W.3d 112, 116 (Tex.2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child’s best interest. See Tex. Fam.Code Ann. § 263.307(a) (West 2008). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:
(A) the desires of the child;
(B) the emotional and physical needs of the child now and in the future;
(C) the emotional and physical danger to the child now and in the future;
(D) the parental abilities of the individuals seeking custody;
(E) the programs available to assist these individuals to promote the best interest of the child;
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).
These factors are not exhaustive. Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. C.H., 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. Id. On the other hand, the presence of scant evidence rele *610 vant to each factor will not support such a finding. Id.
The Department caseworker testified that the girls were together in a therapeutic foster home, their second home since the April 2010 removal. She explained that “they have some behavior issues and other issues that do not make them appropriate for just a regular foster home.” When the Department removed them, they urinated and defecated on themselves and furniture and smeared feces. They continued to have night terrors and take psychotropic medications. E.A.M. had a speech impediment, a phonological disorder, and an expressive language disorder and was receiving speech therapy. The girls’ former therapist testified that E.A.M. had “issues,” that she was “very active or even hyperactive,” and that it was “hard to ... get her to focus.” Both girls were receiving counseling.
The caseworker stated that the girls had improved since coming into care but that they were going to need extra attention and effort in the future and are “[n]ot what you would call normal.” The caseworker opined that appellant would not be able to deal with the girls’ special needs. She stated that he had not demonstrated an understanding of the neglect triggering the removal, the girls’ emotional and psychological issues, or their developmental delays. Ryan reported that appellant was unaware of his daughters having any special developmental needs or behavioral problems. Ryan also testified that with appellant’s “level of functioning and education and his viewpoints,” he would not be able to properly care for an “average, every! ]day, happy six[-]year[-]old,” much less a child with “any form of special needs or any abuse history or neglect history [who] has compound issues and possibly psychiatric issues that would require medication.”
Appellant testified that he did not think that the girls had any speech or developmental delays. But he also stated that he would continue their medications and therapy if he regained custody, as well as provide for their basic needs.
Appellant testified that he had seen the girls once since his December 2009 incarceration; trial was March 23, 2011. E.A.M. acted out during that visit. The caseworker testified that E.AM.’s behavior had also deteriorated after that visit.
The CASA volunteer testified that the girls had told her that they missed their parents and wanted her to send the pictures they colored to them. E.J. testified that the girls love appellant very much and are both “daddy’s girls,” and appellant’s mother testified that the girls love him. The caseworker admitted that the girls had occasionally indicated that they missed him but said that they had stated nothing in depth or lengthy. She testified that the case notes indicated that the girls had expressed a dislike or hatred of appellant.
Vida Phoenix, the girls’ former therapist who treated them for more than a year, testified that the girls never introduced the subject of their father. She did not note any upset feelings or yearning for him at all. She admitted that a couple of her notes showed that E.A.M. had spoken of hating appellant in two sessions soon after her visit with him. But Phoenix testified that there was no evidence that the girls did not want to see or talk to their father. She also testified that she saw no evidence that the girls had a strong bond with him.
The Department caseworker opined that termination of appellant’s parental rights would be in the children’s best interest. E.J. admitted that terminating appellant’s rights would be in the children’s best interest so that they could have some perma *611 nency and stability. Appellant’s mother agreed that he was not able to take care of them at the time of trial because he was confined. Appellant admitted that he believed that he needed additional time to be a better parent. He was also willing to utilize services the Department could offer, like counseling, to improve his ability to parent. The caseworker acknowledged that providing services to appellant while he was incarcerated was difficult.
According to the caseworker, no relative or Active relative had come forward to be considered as a possible placement. The caseworker believed that the children were adoptable but admitted that no prospective adoptive homes had been brought to the Department’s attention.
Reviewing all the evidence with appropriate deference to the factfinder, see 209 S.W.3d at 108, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of the parental relationship between appellant and daughters A.J.M. and E.A.M. is in the girls’ best interest, and we therefore hold that the evidence is sufficient to support the best interest finding.[4] We overrule appellant’s fourth issue.
V. We affirm the trial court’s judgment.
Having overruled appellant’s dispositive issues, we affirm the trial court’s judgment.
WALKER, J., filed a concurring opinion in which GABRIEL, J., joins.
DAUPHINOT, J., filed a dissenting and concurring opinion, in which MEIER, J., joins.

. See Tex.R.App. P. 49.7.

. See Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332, repealed by Act of April 29, 2011, 82nd Leg., R.S., ch. 75, §§ 5, 8, 2011 Tex. Sess. Law Serv. 348, 349 (West); In re 302 S.W.3d 304, 306 (Tex.2010).

.Compare In re D.W., 249 S.W.3d 625, 640, 645 (Tex.App.-Fort Worth 2008) (en banc), pet. denied, 260 S.W.3d 462 (Tex.2008), with J.H.G., 302 S.W.3d at 306 (applying former section 263.405(i) and holding that failure to assert denial of extension in statement of points on appeal barred appellate review where constitutionality of section not raised or presented).

. See Tex. Fam.Code Ann. § 161.001(2).