

IN THE
TENTH COURT OF APPEALS

No. 10-19-00029-CV

IN THE INTEREST OF B.B., B.B., AND S.B., CHILDREN

From the 278th District Court
Leon County, Texas
Trial Court No. 17-0491CV

MEMORANDUM OPINION

Haley and Skyler B. appeal from a judgment that terminated the parent-child relationship between them and their children, B.B., B.B., and S.B. *See* TEX. FAM. CODE ANN. § 161.001. The parents[1] complain that the trial court abused its discretion by denying their motions for extension of the case and that the evidence was factually insufficient for the trial court to have found by clear and convincing evidence that

---

[1] The mother and father were represented by different attorneys at trial; however, they are represented by one attorney in this appeal. Additionally, because the appellants and the appellee used different aliases from each other in their briefing to this Court, in order to avoid confusion, we will refer to the parties and children by their familial identifier, i.e. mother, father, oldest child, etc. TEX. R. APP. P. 9.8(b).

termination was in the best interest of the children. Because we find no reversible error, we affirm the judgment of the trial court.

## MOTION FOR EXTENSION

In their first issue, the parents complain that the trial court abused its discretion by denying their motions to extend the dismissal deadline for 180 days pursuant to Section 263.401(b) of the Family Code. In order to extend the trial court's jurisdiction beyond the one-year deadline set forth in Section 263.401(a), the trial court must find that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE ANN. § 263.401(b). In making this determination, the focus is on "the needs of the child[ren]." *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied) (en banc). Actions that are "considered to be the parent's fault" will generally not constitute an extraordinary circumstance. *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied).

The Department was named the temporary managing conservator of the children on February 1, 2018 after the parents did not attend a hearing on a motion filed by the Department to order the parents to participate in services. The parents' whereabouts were unknown at that time and the children were staying with their maternal grandmother and her husband. The parents had not been served with the motion because

they were unable to be located. The children were formally placed with the maternal grandmother by the Department.

The parents made a general appearance at the status hearing in early April, at which time they signed the service plan and were ordered to take a drug test. The parents took the drug test and had a visit with the children a few days later. No other visits with the children took place during the proceedings.

The parents did not attend the first permanency hearing in July. At that hearing, evidence was presented that the oldest child and the middle child were needing therapy. The Department had requested that the parents take drugs tests on several occasions when the mother contacted them in June, but neither parent took a test when requested. The mother eventually completed two hair tests during the pendency of the proceedings, one in July and one in October, both of which were positive for methamphetamines. The father tested positive for methamphetamines in April around the time of the first visit. A second progress hearing was conducted in August at which time the therapist for the older two children recommended that no visitation be allowed because of the emotional issues the children were having due to the stress and fear of potentially having to visit with their parents. The trial court entered an order that no visitation would be allowed.

The parents finally began efforts to complete the service plan in August or September, but did not begin therapy until October and missed two of seven sessions with their therapist. They did not have a stable residence or steady employment

throughout the proceedings and were living with a couple whose children were also in the conservatorship of the Department at the time of the motion to extend.

In early November, in spite of the children's therapist's concerns, the trial court ordered that a therapy session take place with the children and each of their parents separately before the end of November. Two days later, the mother was charged with child endangerment relating to an incident involving her fourth child who she had given birth to approximately one week before her arrest.[2] The mother was accused of endangering the child by driving while under the influence of narcotics. The father was arrested for outstanding warrants at that same time. Each parent spent around two weeks in jail. The children's therapist spoke with the parents' therapist and they agreed that a visit should not occur due to the emotional distress of the children and the parents' lack of participation and progress in therapy. The oldest child began expressing suicidal ideations around this time, which the therapist believed was related to fear and anxiety over having to see his parents.

The final trial was originally scheduled for early December but was continued by the agreement of the parties to early January of 2019. No complaint was raised to the trial court by the parents regarding the missed visit at the December hearing. Each parent filed a motion to extend the trial court's jurisdiction for 180 days which was heard

---

[2] The fourth child was removed by the Department after the mother's arrest and placed with the maternal grandparents also but that child is not part of these proceedings.

immediately prior to the trial. After hearing evidence, including testimony from the children's therapist and the guardian ad litem that extending the trial court's jurisdiction would be very harmful to the older children, the trial court denied the parents' motions.

The parents argue that the lack of visitation with the children, not by their own fault but that of the Department and the therapist, should have resulted in the extension of the proceedings so that they can visit with the children and show that they could provide a safe and stable home for the children and the trial court's failure to grant the extension was an abuse of discretion. However, the evidence establishes that it was the parents' actions and inaction during the proceedings that resulted in the denial of visitation, and there was sufficient evidence for the trial court to have found that there were no extraordinary circumstances to justify extending the court's jurisdiction and that the extension was not in the best interest of the children. The trial court did not abuse its discretion by denying the motions for extension of the trial court's jurisdiction. We overrule issue one.

**BEST INTEREST**

In their second issue, the parents complain that the evidence was factually insufficient for the trial court to have found that termination was in the children's best interest. They do not challenge the sufficiency of the evidence as to the predicate grounds on which the termination was granted. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (P). Termination decisions must be supported by clear and convincing

evidence. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

In determining whether the evidence is factually sufficient to support the termination of a parent-child relationship, we are required to perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109. As relevant to this proceeding, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent-child relationship was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

In determining the best interest of a child, a number of factors have been considered which have been set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id*. There is no requirement that all of these

factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing the predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the children. *See C.H.*, 89 S.W.3d at 27-28.

The oldest child had expressed a strong desire throughout the proceedings to not ever have to visit with his parents again, and expressed that desire to the trial court during an interview in chambers during the final hearing. The one visit that took place with the parents was traumatic for him, and his therapist did not believe that it would be in his best interest to ever visit with his parents again. He had experienced extreme fearfulness and anxiety from what he had observed and survived while living with his parents. He made allegations of violence between his parents, lack of food, and told of his father killing cats in front of him and making him and his younger brother throw them on a fire in his yard. He had drawn a series of pictures that expressed his fear and low self-esteem that stemmed from his relationship with his parents. The middle child had expressed a desire to remain in his current placement with his maternal grandmother and also displayed anxiety at having to visit with his parents. The oldest child and the middle child had expressed these desires to the guardian ad litem as well as their

therapist. The youngest child was an infant at removal and unable to express any desires regarding his placement.

It is undisputed that the parents did not complete services, especially therapy. They did not keep in regular contact throughout the proceedings, and refused to disclose their address to the Department at various times. It is also undisputed that both parents tested positive for drugs during the proceedings. The mother's positive drug tests occurred while she was pregnant with her fourth child. The father tested positive for drugs at the same time of the only visit with the children in April, and at that visit the caseworker and the guardian ad litem who observed the visit stated that the father appeared to be on drugs and fell asleep on the couch. The parents routinely did not take the tests when requested by the Department and both missed a requested test the week prior to the trial, which the Department considered to be a positive result.

The mother was arrested for child endangerment in November, two days after the hearing where the judge ordered the therapy session. The mother was alleged to have been intoxicated on a controlled substance while driving with her week-old infant in her vehicle and was charged with child endangerment. The father was arrested for outstanding warrants at the same time the mother was arrested in November.

Additionally, they had moved around between California, Texas, and Louisiana from the beginning of the Department's involvement approximately two and a half

months prior to the removal of the children, and did not have a stable residence at the time of the final hearing. The parents also had not maintained employment.

The parents did not provide child support for the children but did provide diapers and some other items one time for the newborn, who had also been placed with the maternal grandparents. The parents blamed the maternal grandmother for the children's fear and contended that she had coached them. The children's therapist did not believe that the children were coached or manipulated by the grandmother, however.

The maternal grandparents were planning to keep the children with them and to adopt them at some point if allowed. The children were doing well in their residence and were also doing well in school. Prior to the removal, the children had been unenrolled from school and homeschooled for approximately nine months, which resulted in both of the older children being kept back a year when they were reenrolled because they had fallen significantly behind educationally.

The parents argue that the lack of visits and the denial of the extension must be considered in determining the best interest of the children because the outcome might have been different in that they would have been more motivated to complete their service plan and they would be able to strengthen the bond between them and the children. However, the evidence showed that it was the parents' failures to refrain from drug use and to initiate and attend counseling and the other services required of them that resulted in the lack of visits and the ultimate finding that termination was in the best

interest of the children. Additionally, the service plan that the parents signed stated that visitation would be suspended in the event of a positive drug test, which would include failing to take a requested drug test, and two negative drug tests would be required for the visits to resume. The lack of visitation throughout a substantial portion of the proceedings is solely the fault of the parents.

When we consider the entire record in light of the *Holley* factors and give appropriate deference to the trial court as the factfinder, we find that the evidence was factually sufficient for the trial court to have found that termination was in the best interest of the children. We overrule issue two.

CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Neill
Affirmed
Opinion delivered and filed May 23, 2019
[CV06]

