

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00110-CV

IN THE INTEREST OF M.S., A CHILD

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 19C0191-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

OPINION

The County Court at Law of Bowie County, Texas, terminated Mother's parental rights to her child, M.S. On appeal, Mother does not challenge the trial court's findings that sufficient grounds existed or that termination of her parental rights to M.S. was in the child's best interests. Instead, she argues that the trial court erred in failing to grant her request for an extension of the dismissal deadline and deprived her of due process by failing to ensure her physical presence at trial.

We find that the trial court did not abuse its discretion in either denying Mother's request for an extension of the dismissal date or in denying her request for a bench warrant. As a result, we affirm the trial court's judgment.

I.    **Factual Background**

The evidence at trial showed that Mother was arrested for abandoning or endangering a child in April 2018 and for possession of a controlled substance in July 2018. After receiving an intake report, Judy Townsend, an investigation supervisor for the Texas Department of Family and Protective Services (Department), issued a child-safety alert for M.S. in February 2019 because "for approximately sixty days no one had actually been able to lay eyes on [M.S.]."[1]

Townsend testified that, during a February 2019 traffic stop, Mother was arrested for possession of a Penalty Group 3 controlled substance while two-year-old M.S. was a passenger in the car. The arresting officer called Townsend to the scene because of her child-safety alert. Townsend testified that she witnessed an open container of alcohol and a bottle of urine in the car.

---

[1]M.S.'s father died before the emergency removal.

She also noticed that M.S. was "very dirty" and hyper as if she were under the influence of some drug and that her car seat was so wet that liquid poured out of it. According to Townsend, Mother was charged with injury to a child and child endangerment when M.S. tested positive for methamphetamine.

It was undisputed at trial that Mother failed to complete her family service plan. Jasmine Turner, a conservatorship caseworker with Child Protective Services, testified that Mother never began individual counseling, tested positive for methamphetamine after M.S.'s emergency removal, failed to complete an in-patient drug treatment program, and refused the Department's nine requests to undergo drug testing between February 21 and July 14, 2019.

Mother was jailed at some point in July. The record showed that, on August 12, 2019, Mother pled guilty to and was convicted of abandoning or endangering a child in April 2018 and possession of a controlled substance in July 2018 and was sentenced to two years' imprisonment for each offense. Even so, Mother's sentence was suspended in favor of placing her on five years' community supervision with the requirement that she be confined in a substance abuse felony punishment facility (SAFPF) for a term of not less than ninety days but not more than one year.

Turner testified that Mother had "a significant amount of time to start her services" before her July 2019 confinement but waited until she was jailed to take "initiative to do anything." She added that M.S. was born with profound hearing loss, could not communicate with anyone at the time of her removal, and had not seen Mother since the removal. Turner said that M.S. had since learned sign language and both Turner and Joey Elliot, the Court Appointed Special Advocate,

3

reported that M.S. was thriving in the care of her foster family.  As a result, Turner testified that termination of Mother's parental rights to M.S. was in the child's best interests.

## II.     The Denial of Mother's Request for an Extension of the Dismissal Deadline Was Not an Abuse of Discretion

The final hearing in this case was set for November 21, 2019.  On November 5, 2019, Mother filed an unverified motion for continuance and extension of the dismissal date of February 8, 2020.  Mother argued that the dismissal date should be extended because she was in a SAFPF; was learning sign language so she could communicate with M.S.; and was enrolled in parenting, grief, bible studies, Celebrate Recovery, and "overcomers" classes.  At trial, counsel urged the trial court to grant the motion because Mother needed "an opportunity to have more time to get herself straightened out and participate in . . . programs."  After reciting that Mother was convicted of a "felony offense regarding [M.S.]," the trial court denied the request for an extension.

A trial court may grant a 180-day extension of the dismissal deadline in a suit filed by the Department to terminate a parent-child relationship on a showing that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child."  TEX. FAM. CODE ANN. § 263.401(b) (Supp.).  "We review a trial court's decision to grant or deny an extension of the dismissal date under an abuse of discretion standard."  *In re A.S.*, No. 12-16-00104-CV, 2016 WL 5827941, at *1 (Tex. App.—Tyler Sept. 30, 2016, no pet.) (mem. op.) (citing *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied)).  The focus on granting this extension "is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of

4

the Department, and whether continuing such is in the best interest of the child." *Id.* at *2 (citing *A.J.M.*, 375 S.W.3d at 604).

Mother's argument for an extension of the dismissal deadline failed to focus on M.S.'s needs and instead anchored on the fact that she was confined in a SAFPF. Her confinement was the result of her actions, and "[a]ctions that are considered to be the parent's fault will generally not constitute extraordinary circumstances." *In re J.S.S.*, No. 10-19-00102-CV, 2019 WL 4511483, at *3 (Tex. App.—Waco Sept. 18, 2019, pet. denied) (mem. op.) (citing *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied)). Because "[a] parent's [confinement or] incarceration is generally considered to be the parent's fault and not an extraordinary circumstance," the trial court did not abuse its discretion in rejecting Mother's argument. *A.S.*, 2016 WL 5827941, at *2 (citing *In re K.P.*, No. 02-09-00028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.)); *see J.S.S.*, 2019 WL 4511483, at *3; *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *10 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.).

Mother also pointed to her recent efforts to comply with the Department's family service plan and argued that she needed more time to complete it. "Failure to begin complying with a family service plan until several weeks before trial does not constitute an extraordinary circumstance when the requirements necessary to obtain the return of the child were known well in advance of that time." *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied). In this case, Mother had five months to begin her family service plan before she was jailed. "[W]hen a parent, through her own choices, fails to comply with a service plan and then

requests an extension of the statutory dismissal date in order to complete the plan, the trial court does not abuse its discretion by denying the extension." *A.S.*, 2016 WL 5827941, at *2. Mother's confinement to a SAFPF was the result of abandoning or endangering M.S. and possessing a controlled substance in 2018. Her inability to complete services due to her confinement was "not [an] extraordinary circumstance[]" but was instead "the consequence[] of [poor] choices." *C.J.B.*, 2019 WL 3940987, at *11. Also, Elliott testified that, even if a 180-day extension were granted, Mother would only have a matter of a few weeks to establish a relationship with M.S., who she had not seen since February 2019.

Because of her repeated refusals to submit to the Department's requests for drug testing during the case, her criminal convictions, her pending charges of possession of a Penalty Group 3 controlled substance, injury to a child, and endangering a child, the trial court could determine that Mother failed to show how it would be in M.S.'s best interests for the extension to be granted. Section 263.401's "clear preference is to complete the process within the one-year period. . . . Because the statutory language prefers finality to suit and because we cannot say the trial court abused its discretion in denying [the] extension," we overrule Mother's first point of error. *In re A.J.M.*, 375 S.W.3d 599, 604–05 (Tex. App.—Fort Worth 2012, pet. denied).[2]

---

[2]To the extent Mother's brief raises a separate point of error about the trial court's denial of a continuance, we also overrule that issue. "A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law." *In re J.D.*, No. 06-18-00105-CV, 2019 WL 1302932, at *7 (Tex. App.—Texarkana Mar. 22, 2019, no pet.) (mem. op.) (citing TEX. R. CIV. P. 251). "If a party's motion for continuance is not . . . verified, then we will presume the trial court did not abuse its discretion." *Id.* Because Mother's motion for continuance is not supported by affidavit, consent, or operation of law, the motion failed to comply with Rule 251, and the trial court did not abuse its discretion in denying it. *See id.*

**III.    The Denial of Mother's Bench Warrant Was Not an Abuse of Discretion**

Because she was "confined in the Texas Department of Corrections at the Henley Unit," Mother filed an application for a bench warrant just two days before the final hearing. The application argued that Mother's testimony was material to the defense, Mother was nonviolent and posed minimal risk, "[t]he stakes . . . [were] indeed high" because Mother was facing termination of her parental rights, and Mother's "demeanor and passion for her child" could not "as persuasively be set forth by telephone." At trial, counsel argued simply, "[Mother]'s not here today. We need her to be here." On appeal, Mother contends that the trial court erred in impliedly overruling her request for a bench warrant.

"The decision to grant or deny a request for a bench warrant lies within the trial court's discretion." *In re J.J.W.*, No. 06-09-00030-CV, 2009 WL 2432634, at *6 (Tex. App.—Texarkana Aug. 11, 2009, pet denied) (mem. op.). "It is well-established that litigants cannot be denied access to the courts simply because they are inmates." *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003) (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984)). "However, an inmate does not have an absolute right to appear in person in every court proceeding." *Id.* "Instead, the inmate's right of access to the courts must be weighed against the protection of our correctional system's integrity." *Id.*

"Texas courts of appeals have recognized a variety of factors that trial courts should consider when deciding whether to grant an inmate's request for a bench warrant," *Id.*, including:

> the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible,

noncumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the prisoner's probability of success on the merits.

*Id.* at 165–66. Another "key consideration is whether the inmate is represented by counsel." *J.J.W.*, 2009 WL 2432634, at *6.

"[A] litigant requesting a bench warrant bears the burden of establishing his or her right to relief, and he or she must provide factual information demonstrating his or her need to appear." *Id.* (citing *Z.L.T.*, 124 S.W.3d at 166). This is because a "trial court does not have a duty to independently inquire into the necessity of an inmate's appearance beyond the contents of the bench warrant request." *Id.* (citing *Z.L.T.*, 124 S.W.3d at 166). As a result, where a litigant does not "provide [sufficient] factual information demonstrating [her] need to appear, a trial court does not abuse its discretion in denying a request for a bench warrant." *In re E.M.C.*, No. 11-08-00235-CV, 2009 WL 1653028, at *6 (Tex. App.—Eastland June 11, 2009, no pet.) (mem. op.); *see Z.L.T.*, 124 S.W.3d at 166; *In re A.H.L., III*, 214 S.W.3d 45, 50 (Tex. App.—El Paso 2006, pet. denied).

Mother's request for a bench warrant shows that she failed to provide sufficient factual information necessitating her personal appearance at the final hearing. She did not address (1) the cost and inconvenience of transporting her to the courtroom, especially in light of the fact that her application came just two days before trial, (2) whether her claims were substantial considering her past history of failing to comply with the Department's family service plans and pending criminal charges, (3) whether the termination trial could reasonably be delayed until her release from a SAFPF, or (4) whether she would offer admissible, noncumulative testimony that could not be effectively presented by deposition, telephone, or some other means. Also, Mother was

8

represented by counsel during the bench trial and presented nothing to refute the trial court's determination that she did not have a probability of success on the merits due to the felony conviction of abandonment or endangerment to M.S. As a result, the trial court did not abuse its discretion in impliedly denying Mother's request to appear in person.

We overrule Mother's last point of error.

**IV.    Conclusion**

We affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:        March 17, 2020
Date Decided:          March 20, 2020