

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00125-CV

———————————————————

IN THE INTEREST OF R.D., A CHILD

---

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-679221-20

---

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

This is an ultra-accelerated appeal[1] in which Appellant R.D. (Father) appeals the termination of his parental rights to his daughter Rhonda,[2] who was removed from his home after his daughter Zoey[3] was taken to Cook Children's Medical Center, where she died due to injuries from nonaccidental trauma. At the time of the trial, Father was in jail on charges of capital murder related to Zoey's death. In a single issue, Father argues that the trial court abused its discretion by denying his counsel's oral motion for continuance, which was made at the outset of the termination trial. Because Father's motion failed to comply with the requisites of Texas Rules of Civil Procedure 251 and 252, because he failed to show extraordinary circumstances and best interest to justify extending the dismissal deadline, and because he did not preserve any constitutional complaints, we affirm.

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of an appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after the notice of appeal is filed).

[2]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights).

[3]Rhonda and Zoey have different mothers but were both fathered by Father. Mother, as used herein, refers to Rhonda's mother.

## II. Background[4]

Zoey had just turned four years old when she died of the massive traumatic injuries we are about to describe. At 1:23 a.m. on February 17, 2020, after being transported by ambulance, Zoey arrived at Cook Children's in full cardiac arrest; her heart was not beating on its own, and she was not breathing on her own. A full physical exam revealed that Zoey had extensive severe bruising on all planes and extremities of her body. Imaging revealed that Zoey also had evidence of severe physical internal trauma, including cerebral edema (excessive swelling of her brain) that was described as "a life-threatening, devastating injury that you often can't recover from -- or you can't recover from."[5]

### A.     Father's Explanation for Zoey's Injuries and Mother's Alibi

Father told an emergency-room physician that Zoey had fallen from a plastic slide around 10:00 or 10:30 a.m. on February 16 and that she might have hit her head multiple other times throughout the day. After the physical exam revealed severe bruising all over Zoey's body, Father disclosed that around 11:00 a.m. he had given her a whipping with a belt due to not following his instruction to pick up toys in the playroom; he said that he had "got[ten] a good six licks in before she [had] started to

---

[4]Because Father does not challenge the sufficiency of the evidence, we set forth a brief background but do not detail all of the evidence in the over 2,000 pages of medical records.

[5]Testimony at trial revealed that Zoey's head injury is typically seen in a high-speed car crash or an auto–pedestrian accident because it takes such a high velocity to cause that injury.

wiggle," and then he had held her down by her neck while he had continued whipping her. Father disclosed that he had taken off Zoey's pants but had left her underwear on and that the belt had hit other parts of Zoey's body; Father acknowledged to the nurse that the whippings he had given Zoey the previous morning had caused bruises. Father then told Zoey to go stand in the playroom, which he had emptied of all toys, and to do her breathing exercises.[6]

Mother did not physically see Father discipline Zoey that morning because he had taken Zoey to another room. Around 2:30 p.m., Mother went to Dallas and took two-and-a-half-year-old Rhonda with her.

Father left Zoey alone in the playroom from 2:30 p.m. until 4:30 or 5:00 p.m. He checked on her only once, around 4:30 or 5:00 p.m., which is when he discovered that she had urinated and defecated on herself. He gave her a bath, put some ice on the knot on her swollen forehead, and put lotion and coconut oil on her bruises. According to Father, he ate dinner around 6:30 p.m., but Zoey did not want to eat. So Father returned Zoey to the empty playroom and told her to stand there and do her breathing exercises.

When Mother and Rhonda returned home around 10:30 p.m., Father did not allow Mother to enter the playroom. Father checked on Zoey and found that she had soiled herself again. Father told Mother that he would give Zoey a bath and put her

---

[6]Mother explained to a nurse that the breathing exercises were "something that [Zoey] used to do via an app."

to bed. Mother did not see Zoey until later that night when Mother found Zoey unresponsive.

## B. Medical Opinions

Caitlyn Bastable, a pediatric nurse practitioner who treated Zoey when she arrived at Cook Children's on February 17, opined that Zoey's traumatic brain injury was caused by excessive blunt force trauma and that the traumatic brain injury had caused Zoey not to be able to breathe on her own. The nurse further opined that Zoey's death (declared at 6:06 p.m. on February 18, 2020) was caused by nonaccidental trauma most likely inflicted by Father "based on the history that he gave [her]."[7] The nurse testified that the autopsy ruled that the cause of Zoey's death was homicidal violence.

## C. Rhonda's Removal and Return to Mother

The Department of Family and Protective Services removed Rhonda from Father and Mother's home shortly after Zoey was admitted to Cook Children's. Mother worked her services and filed for divorce from Father after he was arrested on

---

[7]In addition to Father's admission about whipping Zoey with a belt, it was disclosed to the nurse that Father was a Golden Glove boxer. The nurse testified that when they

> see kids with inflicted injuries or physical abuse injuries from caregivers, they are horrible and excessive, require a lot of force, and then I think that even steps it up a level when you have an athlete or someone that knows how to throw punches when you're punching a child. That force can be great and excessive and cause that extensive injury that she in turn sustained.

the charges related to Zoey's death. A motion for monitored return was filed in October 2020, and the trial court granted the motion approximately three weeks later.

## D. Recommendation and Termination

The termination trial was held on April 16, 2021. Conservatorship worker Joan Hall testified that Father did not start any of his services during the three months before he was taken to jail and that she had not received any documentation showing that Father had worked any services while in jail. Hall asked the trial court to terminate Father's parental rights to Rhonda and opined that termination of Father's parental rights is in Rhonda's best interest because "[h]e's responsible for the death of [Zoey]," he poses a physical danger to Rhonda should he ever be released, he has significant anger issues that caused him to beat Zoey to death, and he has not addressed that nor has he taken responsibility for Zoey's death. The trial court terminated Father's parental rights to Rhonda based on Subsections (D) and (E) (the endangerment grounds) and Subsection (O) (the failure-to-work-the-service-plan ground).

## III. No Abuse of Discretion by Denying Oral Motion for Continuance

At the outset of the termination trial, which was held on a Friday, Father's attorney made the following oral motion for continuance:

> Your Honor, if I may, I lost my internet connection last night. . . . I was working on a motion for continuance. My internet connection, I think, has been restored at my home, but that doesn't do me any good here. I was going to file a motion for continuance based on two factors, if I may.

6

[Father] has been indicted with capital murder of a child younger than 10. He has not had a trial[,] and it's not likely that he will have a trial for at least another year.

Secondly, I talked to . . . his third criminal defense lawyer Monday afternoon, who had told me that he would be providing me with the name of an expert witness who had a different take on the State's evidence. I have not received any information from that physician or otherwise -- you know, I don't even know what his name is. He was supposed to call me.

So for those reasons, and not that -- not for the sake of delay, but that justice be done for my client, who's still innocent of any charges, he's just been indicted, not convicted, I would ask the Court to entertain my motion for continuance.

The Department asked the trial court to deny the motion because

[t]his matter has been ongoing since February of last year. At the last perm[anency] review for this case, we did announce that this would be a trial for termination of [Father's] rights exclusively, as well as managing conservatorship to [Mother], who already has the child. [Mother] and the child deserve permanency in this case, and we ask today that you move forward with the trial. We do understand that there are limitations with expert witnesses; however, as I said, at the last permanency review hearing, we did announce and set the trial for today,[8] and we ask that you deny the motion for continuance and proceed.

Mother's attorney and the child's guardian and attorney ad litem also asked the trial court to deny the motion based on the child's best interest—to "proceed today in order to provide a resolution to the legal matters regarding this child." The trial court denied the motion.

---

[8]The record contains a "Notice of Hearing" dated December 17, 2020, and that notice states that "[a] Final Hearing for Termination is set for **April 16, 2021**."

In his sole issue on appeal, Father argues that the trial court abused its discretion by denying his motion for continuance. As we explain below, the trial court acted within its discretion to deny the motion because it did not meet the requirements of Rules 251 and 252.

## A. Standard of Review

A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *In re J.S.S.*, 594 S.W.3d 493, 500 (Tex. App.—Waco 2019, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without any guiding rules or principles, or, stated another way, when the trial court's actions are arbitrary or unreasonable. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), and *In re M.R.R.*, No. 10-15-00303-CV, 2016 WL 192583, at *7 (Tex. App.—Waco Jan. 14, 2016, no pet.) (mem. op.)).

## B. Rules 251 and 252

Under Texas Rule of Civil Procedure 251, a continuance will not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. When a movant fails to comply with those requirements, "we presume the trial court did not abuse its discretion in denying the motion." *J.S.S.*, 594 S.W.3d at 501. In this case, counsel's oral motion did not comply with Rule 251 because it was not supported by an affidavit, it was not made pursuant to an agreement between the parties, and it was not required by operation of law. *See In re J.P.-L.*, 592 S.W.3d 559, 576 (Tex. App.—Fort Worth 2019, pet. denied)

8

("Because Mother did not comply with Rule 251 and two of the parties disagreed with her oral request for a continuance, the trial court did not abuse its discretion by denying the motion."); *In re M.A.-O.R.*, No. 02-11-00499-CV, 2013 WL 530952, at \*5 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by denying an oral motion for continuance that was made just before the termination trial began because the record did not contain a written motion for continuance, an affidavit, or sworn testimony in support of the motion).[9]

Even assuming Father's oral request was sufficient to preserve error, we would conclude that the trial court did not abuse its discretion by denying a continuance. When, as alleged here, the ground for a continuance is the want of testimony, the movant must

> make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

Tex. R. Civ. P. 252.

The rule required Father to make an affidavit "that such testimony is material, showing the materiality thereof." *See id.* Here, Father stated only that the expert "had

---

[9]A party may satisfy the writing requirement by simply hand writing a motion for continuance.

a different take on the State's evidence." Having "a different take," however, is not specific enough to show that the testimony is material, especially in light of Father's statements to various medical professionals at Cook Children's that he had beaten Zoey.

As to the rule's affidavit requirement, Father acknowledges the requirement but contends in his brief that he was unable to file a verified motion because his trial counsel's internet connection was not working the night before the trial. Father attempts to liken this scenario to a case from the Houston Fourteenth Court of Appeals in which the court reversed the denial of a motion for continuance when the appellant's attorney was unable to file a verified motion because the appellant unexpectedly did not appear for trial despite having been properly bench warranted. *See In re L.N.C.*, 573 S.W.3d 309, 320–21 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). That case, however, is distinguishable on its facts.

The record here demonstrates that the trial date had been known for four months, that Father's counsel had not garnered information from Father's criminal defense attorney about a potential expert witness until the Monday of the week of the trial, that Father's counsel provided no explanation for his lack of diligence in not obtaining the information about the expert prior to the week of trial, and that Father's counsel had none of the required details about the expert witness's name and residence. *See* Tex. R. Civ. P. 252. Father did not show how his trial counsel's

nonworking internet the night before the trial contributed to Father's failure to obtain the required identifying information from the expert in the months preceding the trial.

Because Father did not show the materiality of the testimony he sought to obtain and because he did not show that he exercised due diligence in seeking to obtain information about the expert prior to the week of the trial, we hold that the trial court did not abuse its discretion by denying the motion for continuance. *See Beaupre v. Beaupre*, 700 S.W.2d 353, 356 (Tex. App.—Fort Worth 1985, writ dism'd) ("Since Mr. Beaupre did not exercise due diligence in seeking to obtain the information needed from the doctors, we [hold] that the trial court did not abuse [its] discretion [by] overruling the motion for continuance.").

## IV. No Showing of Extraordinary Circumstances of Best Interest to Extend Dismissal Deadline

To the extent that Father's oral motion can be broadly construed as requesting an extension of the dismissal deadline under Section 263.401(b), he failed to show extraordinary circumstances and that any such extension would be in Rhonda's best interest.

The Amarillo Court of Appeals dealt with a similar scenario and set forth the law on extending the dismissal deadline and explained why the trial court did not abuse its discretion by denying an extension as follows:

> The trial court may extend the dismissal deadline if the movant shows "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing

conservator is in the best interest of the child." [Tex. Fam. Code Ann.] § 263.401(b) . . . . "The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied) (en banc). Actions that are "considered to be the parent's fault" will generally not constitute an extraordinary circumstance. *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied).

Here, the trial court appointed the Department as temporary managing conservator of [the child] on August 4, 2017, due to concerns of [Mother's] use of methamphetamine and her previous history with the Department. The trial on the merits was held on July 13, 2018, two weeks prior to the statutory dismissal deadline. The day before the trial, [Mother] filed a motion to extend the dismissal date and to retain the case on the court's docket. [Mother] asserted that she was arrested on November 8, 2017, and remains incarcerated in the Dallam County Jail under indictment for murder with a $1,000,000 bond. The motion further stated that "there is no trial date set on the pending charge," and she "began working services[] but was unable to complete them due to her arrest." [Mother] urged the court to find her incarceration an extraordinary circumstance which necessitates the retention of the case on the docket for six months to give her time to resolve the criminal charges.

[Mother] is accused of killing her father, the grandfather of [the child]. . . . The Department opposed the extension because [Mother] "could easily be charged with a capital case, and there is no end in sight as far as when her criminal case will even go to trial." The guardian ad litem and C.A.S.A. volunteer also objected to the extension. The trial court rejected [Mother's] contention that her incarceration was an extraordinary circumstance meriting an extension. *See In re X.S.*, No. 07-17-00422-CV, 2018 WL 1867556, at *4 . . . (Tex. App.—Amarillo [Apr.] 18, 2018, no pet.) (mem. op.) (no plausible evidence presented that incarceration was an "extraordinary circumstance" or that extension would be in child's best interest). Based on the nature of the charges and the lack of a trial date, the trial court could have concluded that continuing the trial for six more months would not impact [Mother's] ability to complete her family plan of service or be in the best interest of

12

[the child]. We cannot say that the court abused its discretion by denying [Mother's] extension request.

*In re E.F.*, No. 07-18-00281-CV, 2018 WL 4997785, at *1–2 (Tex. App.—Amarillo Oct. 15, 2018, pet. denied) (mem. op.) (footnote omitted).

Here, the December 15, 2020 "Permanency Hearing Order Before Final Order" states that the dismissal date was set for May 21, 2021, which was approximately one month after the trial date. Due to the backlog of criminal cases pending because of the COVID-19 pandemic, Father's counsel conceded that it might be "another year" before Father's criminal case goes to trial. As in *E.F.*, the trial court here could have concluded that continuing the trial for six more months would not have impacted Father's ability to complete his service plan or be in Rhonda's best interest. *See id.* at *2. We therefore hold that the trial court did not abuse its discretion by denying Father's extension request.

## V. Failure to Preserve Any Constitutional Argument

In his brief, Father further contends that the trial court's rejection of his motion for continuance denied him "his fundamental constitutional rights" and that "[t]he denial of the motion for continuance prevented [his] counsel from properly defending [Father's] constitutional rights." However, in his oral motion for continuance, Father did not expressly cite the Constitution, state that he was making a constitutional objection, or otherwise make the trial court aware that he was raising an objection based on any particular constitutional right. Therefore, we hold that Father

failed to preserve his constitutional complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *In re Z.C.J.*, No. 04-12-00010-CV, 2012 WL 3597209, at *2 (Tex. App.—San Antonio Aug. 22, 2012, pet. denied) (mem. op.).

## VI. Conclusion

Having addressed each of the arguments raised by Father within his sole issue, we overrule Father's sole issue, and we affirm the trial court's order terminating his parental rights to Rhonda.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: September 16, 2021

14