

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00008-CV

## IN THE INTEREST OF A.P., A CHILD

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2020-2863-3**

## MEMORANDUM OPINION

Ashley R. appeals from a judgment that terminated her parental rights to her child, A.P. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), & (2). In five issues, Ashley complains that the evidence was legally and factually insufficient for the trial court to have found that she: (1) "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child" (Issue one), (2) constructively abandoned the child (Issue two), (3) failed to complete her service plan (Issue two), and (4) that termination was in the best interest of the child (Issue three); that her due process rights were violated by the process by which attorneys are appointed in McLennan County in proceedings with the Department of Family and Protective Services (Issue four); and that the trial court abused its discretion

by denying her motion for extension of the final hearing and the case (Issue five). Because we find no reversible error, we affirm the judgment of the trial court.

## SUFFICIENCY OF THE EVIDENCE

In her first, second, and third issues, Ashley complains that the evidence was legally and factually insufficient to support the termination of her parental rights. The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). If the evidence is sufficient as to one ground, it is not necessary to address the other predicate grounds because sufficient evidence as to only one ground in addition to the best interest finding is necessary to affirm a termination judgment. *In re N.G.*, 577 S.W.3d 230, 232-33 (Tex. 2019).

### PREDICATE ACTS

The termination judgment reflects that Ashley's parental rights were terminated based on four predicate grounds: endangering environment (Subsection (D)); endangering conduct (Subsection (E)); constructive abandonment (Subsection (N)); and

failure to comply with a court-ordered service plan (Subsection (O)). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). However, Ashley's issues on appeal challenge only the endangering-conduct ground, the constructive abandonment ground, and the service-plan ground. By failing to challenge the trial court's endangering-environment finding under Subsection (D), Ashley has waived any complaint about the sufficiency of the evidence to support that finding. *See id*. § 161.001(b) (requiring only one predicate ground to support termination); *In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam) (stating that "only one ground is required to terminate parental rights").

Because Ashley has not challenged the sufficiency of the evidence as to Subsection (D), we find that there was sufficient evidence as to one ground to support the termination of her parental rights. Further, although we would generally have been required to address the sufficiency of the evidence as to Subsection (E) due to potential collateral consequences in the future, we are not required to address that complaint because the unchallenged ground pursuant to Subsection (D) satisfies this requirement. *See In re N.G.*, 577 S.W.3d at 236–37 ("allowing a challenged section 161.001(b)(1)(D) or (E) finding to stand unreviewed...creates the risk that a parent will be automatically denied the right to parent other children even if the evidence supporting the section 161.001(b)(1)(D) or (E) finding were insufficient"). We overrule issues one and two.

**BEST INTEREST**

In her third issue, Ashley complains that the evidence was legally and factually insufficient for the trial court to have found that termination was in the best interest of

the child. In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's *Holley* opinion. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* at 372. There is no requirement that all of the factors be proved as a condition precedent to termination, and the absence of evidence regarding some factors does not preclude a factfinder from determining that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence establishing one of the predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the child. *Id*. at 27-28.

A.P. was approximately four and a half years old at the time of her removal from her mother and almost six years old at the time of trial, and while she appeared to be bonded to her mother, she was too young to express her desires. Ashley contended that A.P. wanted to come home to her and that any of A.P.'s emotional issues were a result of their separation.

Ashley had entered into a safety plan for A.P. prior to her removal but refused to maintain contact with the Department and hid the child from the Department. Ashley was residing with a man who had stabbed himself, allegedly in A.P.'s presence. and who was a user of methamphetamine. Ashley denied that the stabbing occurred in A.P.'s presence. Ashley denied using methamphetamine but admitted to using marijuana throughout the proceedings until shortly before trial, which was in violation of her service plan. Ashley's father had become ill and passed away early in the case, and Ashley

used marijuana for some time as a coping mechanism but claimed that she had stopped before the trial.

A.P. was located with Ashley's mother near Waco at the time of her removal, although Ashley had told the Department that they were out of state when the Department was attempting to ensure A.P.'s safety. The Department's witnesses each testified that there were persistent problems with communication with Ashley prior to the removal and throughout the proceedings.

Ashley did not start participating in services until around the time of the first permanency hearing, including regularly participating in visits with A.P. Ashley completed some services in her service plan but did not start individual counseling until shortly before the final two trial settings. Ashley blamed the Department entirely for her failure to complete her services and testified that everyone that she had dealt with during the case were liars and untruthful. She had four caseworkers during the pendency of the proceeding. Ashley did acknowledge that she did not inform the trial court of her alleged difficulties with communicating with the caseworkers to establish services at any time throughout the proceedings and the supervisor in her case testified that it was the inability to communicate with Ashley that had been largely to blame for the failure. Ashley had moved multiple times during the proceedings and had started a new job shortly before the last settings in the trial. Shortly before the last settings in the trial, Ashley signed a three-month lease for a residence and moved in with another man who had a fairly recent criminal history that included domestic violence and drug possession.

The man's children had been removed by the Department in 2017, although they were later returned. Ashley did not inform the Department that she was living with this man because they did not ask her. The Department was able to visit her residence the morning of the last day of trial, and it was appropriate as far as its condition. Ashley also had a vehicle.

Most telling, and most troubling in our best interest review, however, is the emotional trauma that was inflicted on A.P. which was expressed at a visit with Ashley in the middle of the proceedings. Ashley came to a visit with A.P. with visible blood, bruises, cuts, and scratches from some type of altercation. A.P. was extremely upset when she saw her mother. Prior to this occasion, A.P.'s affect had been very flat and she did not express a lot of emotion about what had happened in her mother's care. However, after this visit A.P. began regressing behaviorally, became "very scared," "worried," "nervous," and "anxious" and later told her counselor that "[name] did this to her. I don't know why she is with him. He did this before." The foster parents both described how upset A.P. was after the visit, and her therapist opined that seeing her mother that way was "emotionally triggering" for A.P. and that she had likely witnessed Ashley in this condition before. Ashley's perspective, however, was that it was not a problem for her to attend the visit in that condition and that they "had the best time" during the visit. She testified that the therapist was being untruthful in stating that A.P. had been negatively impacted by seeing her this way. Ashley contended that she had been in an unprovoked altercation with her brother right before the visit. Ashley did not want to miss the visit,

so she came in a battered condition without consideration for how it might affect A.P. to see her that way.

A.P. had emotional outbursts in each of her four placements, which had resulted in her removal from them, including a relative placement that took place near the end of the case. A.P.'s outbursts were generally worse during the times when she was having visits with her mother; when she was not having visitation such as during the time when visits were suspended due to Ashley's failure to take drug tests the outbursts lessened and A.P.'s behavior improved. Ashley contended that any emotional issues were because A.P. wanted to be returned home to her; however, A.P.'s therapist testified that A.P. told her that she cared for her mother but never asked about going home. Even if A.P. was upset because she was separated from her mother, it makes Ashley's lack of participation in services until months after the case was filed more significant because Ashley refused to take the necessary steps to have A.P. returned to her.

A.P. was currently placed with a couple who was experienced with children with emotional issues who had met her during another foster placement prior to the relative placement. The couple were interested in adopting A.P. and were capable of meeting any of her needs.

We find that, by reviewing the evidence using the appropriate standards and giving deference to the trial court as the factfinder, the evidence was legally and factually sufficient for the trial court to have found that termination was in the best interest of the child. We overrule issue three.

## APPOINTMENT OF COUNSEL

In her fourth issue, Ashley complains that the system of appointing counsel in proceedings in McLennan County in which the Department of Family and Protective Services is a party promotes inadequate representation of counsel. Ashley alleges that the county has a contract with specific attorneys to handle a specified number of cases for a flat fee per month, which results in a "chilling effect" on that counsel's advice regarding whether to pursue a jury trial or a bench trial. However, this argument was not made to the trial court, and the contentions in Ashley's brief are not part of the appellate record in this proceeding. Further, Ashley does not argue that she received ineffective assistance of counsel in this proceeding. We do not find that this issue was properly preserved, and even if it was, it was inadequately briefed for us to consider it. *See* TEX. R. APP. P. 33.1(a), 38.1(h). We overrule issue four.

## FAILURE TO GRANT EXTENSION

In her fifth issue, Ashley complains that the trial court erred by denying her motion for extension she filed pursuant to Family Code Sections 263.401(b-3) and 263.4011. The trial was conducted over the span of three months, beginning briefly on September 28, 2021, then recessed to October 21, 2021 when it was recessed to November 16, 2021 because the Department was placing the child in a relative placement and asked for additional time for that to take place. On November 16, 2021, the trial was recessed to December 16, 2021 because the trial court did not have time that day to conduct a contested trial. On December 16, 2021, the trial resumed but did not finish, and was

recessed to and completed on December 29, 2021. Ashley filed her motion on December 13, 2021.

Generally, the trial court is required to commence a trial on the merits no later than "on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator" unless an extension is granted for up to 180 days based upon the trial court's findings that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *See* TEX. FAM. CODE ANN. §263.401(a), (b).

In 2021, Section 263.401(b-3) of the Family Code was amended to allow for the extension of the case as follows:

> A court shall find under Subsection (b) that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department if:
>
> (1) a parent of a child has made a good faith effort to successfully complete the service plan but needs additional time; and
>
> (2) on completion of the service plan the court intends to order the child returned to the parent.

Act of May 25, 2021, 87th Leg., ch. 8 (H.B. 567), § 9 (codified at Tex. Fam. Code § 263.401(b-3)).

Additionally, Section 263.4011 was added at the same time to the Family Code which states:

(a) On timely commencement of the trial on the merits under Section 263.401, the court shall render a final order not later than the 90th day after the date the trial commences.

(b) The 90-day period for rendering a final order under Subsection (a) is not tolled for any recess during the trial.

(c) The court may extend the 90-day period under Subsection (a) for the period the court determines necessary if, after a hearing, the court finds good cause for the extension. If the court grants a good cause extension under this subsection, the court shall render a written order specifying:

(1) the grounds on which the extension is granted; and
(2) the length of the extension.

(d) A party may file a mandamus proceeding if the court fails to render a final order within the time required by this section.

Act of May 25, 2021, 87th Leg., ch. 8 (H.B. 567), § 10 (codified at Tex. Fam. Code § 263.4011).

Each of the sections of the Family Code upon which Ashley based her motion were enacted by the Legislature in 2021 and did not become effective until September 1, 2021. Neither statute applies to this proceeding because the Act specifically stated that:

The changes in law made by this Act apply only to a suit filed by the Department of Family and Protective Services on or after the effective date of this Act. A suit filed by the department before that date is governed by the law in effect on the date the suit was filed, and the former law is continued in effect for that purpose.

Act of May 25, 2021, 87th Leg., ch. 8 (H.B. 567), § 15.

This proceeding was initiated in September of 2020. Therefore, the law that was in effect for this proceeding required a finding of extraordinary circumstances and best interest pursuant to Section 263.401(b). The trial court was not asked to make findings of

extraordinary circumstances or regarding the best interest of the child in granting the extension. Rather, Ashley argued that she needed the extra time to complete counseling since she had just had her first appointment in December shortly before the trial and would be able to complete it if an extension was granted. The Department did not oppose the extension but stated that their intent to seek termination would not change with the extension. The attorney ad litem was opposed to the extension. The trial court denied Ashley's motion for extension.

We review a trial court's decision to grant or deny an extension of the dismissal date under an abuse of discretion standard. *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). Under the law as existing prior to the statutory amendments, the failure to begin complying with some part of a family service plan until several weeks before trial court does not constitute an extraordinary circumstance when the requirements necessary to obtain the return of the child were known well in advance of that time. *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied). Further, when a parent, through her own choices, fails to comply with a service plan and then requests an extension of the statutory dismissal date in order to complete the plan, the trial court does not abuse its discretion by denying the extension. *See In re K.P.*, No. 02-09-00028-CV, 2009 Tex. App. LEXIS 6301, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.). Actions that are considered to be the parent's fault will generally not constitute extraordinary circumstances. *In re J.S.S.*, 594 S.W.3d 493, 2019 WL 4511483, at *3 (Tex. App.—Waco Sept. 18, 2019, pet. denied) (mem. op.).

Ashley contended that it was the Department's fault that she did not start counseling until so late in the case; however, the trial court was within its discretion to find that Ashley's assertions were not credible in light of her failure to inform the trial court at any time during the proceedings prior to the last trial settings in December that she had been unable to communicate with her caseworkers or to comply with the therapy requirement or any other part of her service plan. We find that the trial court did not abuse its discretion by denying Ashley's motion for extension. We overrule issue five.

## CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed May 4, 2022
[CV06]

