

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00070-CV

## IN THE INTEREST OF K.S., A CHILD

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 21-000245-CV-85**

## MEMORANDUM OPINION

Mother appeals from the trial court's order terminating her parental rights to her child, K.S.[1]  After hearing all the evidence, the trial court found by clear and convincing evidence that Mother (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the child, (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the child, and (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child.  TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (O)(West).  The trial court further found by clear and convincing evidence that

---

[1] The father of K.S. is not a party to this appeal.

termination was in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001 (b) (2) (West).  We affirm.

## MOTION TO RETAIN

In the first issue, Mother complains that the trial court abused its discretion in failing to grant her motion to extend the case.  Section 263.401 of the Texas Family Code provides that unless the Court has commenced the trial on the merits or granted an extension, on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator, the Court's jurisdiction over the suit is terminated and the suit is automatically dismissed without a court order.  TEX. FAM. CODE ANN. § 263.401 (a) (West).

The trial court signed a temporary order appointing the Department as temporary managing conservator of K.S. on January 29, 2021.  Therefore, the trial court's jurisdiction over the suit would be terminated on January 31, 2022, and the suit automatically dismissed.  On December 30, 2021, Mother filed her Motion to Retain Suit on Court's Docket and Set New Dismissal Date.

We review a trial court's decision to grant or deny an extension of the dismissal date under an abuse of discretion standard.  *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App. —Fort Worth 2012, pet. denied).  The focus on granting this extension "is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the

temporary custody of the Department, and whether continuing such is in the best interest of the child." *Id.*

Section 263.401 (b) sets out the circumstances in which the automatic dismissal date--and thus the trial court's jurisdiction over the suit--may be extended.

> Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

TEX. FAM. CODE ANN. § 263.401 (b) (West).

> When considering under Subsection (b) whether to find that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department for a case in which the court orders a parent to complete a substance abuse treatment program, the court shall consider whether the parent made a good faith effort to successfully complete the program.

TEX. FAM. CODE ANN. § 263.401 (b-2) (West).

The trial court found that Mother did not make a good faith effort to complete her service plan. Mother argues that she requested the extension to allow her the opportunity to complete inpatient drug treatment as required by her service plan. Mother initially chose not to participate in inpatient treatment. She missed intake appointments and indicated she did not want to go to inpatient treatment. Later on, Mother indicated that

she did want to go to inpatient treatment in order to get K.S. back. However, she did not

meet the admission requirements for inpatient treatment because she told the facility she

had not used drugs. Mother had positive drug tests during the time she told the facility

she had not used drugs. Mother began outpatient drug treatment in September 2021;

however, she missed many of her treatment sessions. We cannot say that the trial court

abused its discretion in finding that Mother did not make a good faith effort to complete

her service plan. We overrule the first issue.

### SUFFICIENCY OF THE EVIDENCE

In issues two and three Mother argues that the evidence is insufficient to support

the trial court's predicate parental termination findings under Section 161.001 (b) (1) (D)

and (E) of the Texas Family Code. In the fourth issue, Mother argues that the evidence is

insufficient to support the trial court's findings under Section 161.001 (b) (1) (O). Only

one predicate act under section 161.001 (b) (1) is necessary to support a judgment of

termination in addition to the required finding that termination is in the child's best

interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In conducting a legal sufficiency

review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the
> finding to determine whether a reasonable trier of fact could have formed
> a firm belief or conviction that its finding was true. To give appropriate
> deference to the factfinder's conclusion and the role of a court conducting a
> legal sufficiency review, looking at the evidence in the light most favorable
> to the judgment means that a reviewing court must assume that the
> factfinder resolved disputed facts in favor of its finding if a reasonable
> factfinder could do so. A corollary to this requirement is that a court should
> disregard all evidence that a reasonable factfinder could have disbelieved
> or found to be incredible. This does not mean that a court must disregard

*all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

[A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

**ENDANGERING THE CHILD**

To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533.

When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of

whether the child's surroundings threaten his or her well-being. *In the Interest of E.M.*, 494 S.W.3d 209, 221 (Tex. App. —Waco 2015, pet. den'd). Section D permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *Id*. It is not necessary that the parent's conduct be directed toward the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *Id*. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id*. In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Id*. Section D permits termination based upon only a single act or omission. *In the Interest of E.M.*, 494 S.W.3d at 222.

Under subsection 161.001 (b) (1) (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id*. Under subsection (E) it can be either the parent's conduct or the conduct of a person with whom the parent knowingly leaves the child that endangers the physical or emotional well-being of the child. In either instance it is thus the direct result of the parent's conduct that results in the termination of the parental rights. It is not necessary, however, that the conduct be directed at the child or that the child actually suffer injury. *In the Interest of E.M.*, 494 S.W.3d at 222.

Mother has four children. The oldest child is an adult and not part of these proceedings. The Department of Family and Protective Services filed an original petition for the protection of Mother's children, J.S., T.S., and K.S. The father of J.S. and T.S. was appointed as their sole managing conservator. Mother was appointed as their possessory conservator. J.S. and T.S. are not subject to this appeal.

The Department first became involved with Mother in November 2008 because of allegations of abuse against J.S. and T.S. Mother was referred for services, but she did not complete them. The Department again became involved with Mother in June 2011 over concerns of domestic violence.

The Department next became involved with Mother on January 3, 2021 when Mother was stopped for a traffic violation and law enforcement found methamphetamine in her vehicle. T.S. and K.S. were in the vehicle with Mother at the time of the traffic stop. Mother was arrested for possession of methamphetamine. T.S., who was fifteen years-old at the time, was also in possession of drugs and was placed in juvenile detention. There was another incident around that time where Mother was in possession of methamphetamine while T.S. and K.S. were with her. Mother said that the drugs belonged to her sister, but admitted that she was addicted to methamphetamines. The Department filed for protection of J.S., T.S., and K.S.

K.S. was six years-old at the time Mother was arrested for possession of methamphetamine. Mother wanted K.S. to be placed with her parents when he was

removed from her care, but there were concerns of drug use in her parents' home. At the time of the removal, J.S. was on runaway status and T.S. was in juvenile detention.

Keandra Jones, the Department Conservator Specialist assigned to this case, testified that a service plan was developed for Mother in March 2021 which required Mother to complete inpatient treatment for substance abuse and drug test monthly. Jones stated that Mother tested positive for methamphetamines on her "hair follicle" test on more than one occasion. Jones further stated that Mother initially went for her drug testing, but there were problems with her drug tests in November and December of 2021. Jones testified that Mother has not addressed her substance abuse.

Jones further testified that she speaks with K.S. monthly. K.S. told Jones that he was exposed to drug use while he was with Mother. K.S. also said that J.S. and T.S. physically abused him by shooting him with a BB gun in his stomach and also burning him several times. K.S. also told Jones that he had smoked marijuana and that he was left unsupervised at times.

Domestic violence may support a finding of endangerment under either Sections 161.001 (b) (1) (D) or Section 161.001 (E) depending on the given circumstances. *See In the Interest of A.L.H.*, 624 S.W.3d 47, 57 (Tex. App. —El Paso 2021, no pet.). K.S. was exposed to domestic violence in the home and was the victim of abuse in the home.

A parent's use of narcotics and its effects on his or her ability to parent may qualify as an endangering course of conduct under Subsection (E). *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Mother was in possession of methamphetamine while her children

were with her, and she admitted to being addicted to methamphetamine. Mother tested positive for methamphetamine after K.S. was removed. K.S. said that he has been exposed to drug use. There was testimony that both J.S. and T.S. use drugs.

We find that the evidence is sufficient to support the trial court's findings that Mother knowingly engaged in conduct or knowingly placed K.S. with persons who engaged in conduct that endangers the child. TEX. FAM. CODE ANN. § 161.001 (b) (1) (E) (West). We overrule the third issue on appeal. Because we find that the evidence is sufficient under Section 161.001 (b) (1) (E), we have addressed the concerns of protecting Mother's due process and due course of law rights. *See In the Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019).

Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we need not address the second and fourth issues. TEX. R. APP. P. 47.1.

## BEST INTEREST

In the fifth issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the child. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now

and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App. —Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id*.

K.S. was seven years-old at the time of trial. There was testimony that he had not expressed any desire to return to his mother. K.S. is afraid of his brothers J.S. and T.S. and did not want any visitation with them.

K.S. currently attends therapy weekly and has been diagnosed with ADHD and PTSD. He takes medication for ADHD. K.S. is now doing well in school and is passing all of his classes. While in Mother's care, K.S. did not attend school regularly, did not receive routine medical care, and did not receive therapy or medications. While in the care of Mother, K.S. was exposed to drug use and violence. Both of his brothers used drugs, and K.S. stated that he had smoked marijuana. The brothers physically abused K.S., and Mother did not protect him from that abuse.

Because of Mother's drug use and history of incarceration, K.S. was frequently cared for by his maternal grandparents. When considered by the Department as a placement for K.S., the grandparents tested positive for drugs. Mother continued to live with her parents at the time of trial. There is nothing in the record to show that Mother has a plan for a stable living environment for K.S. Mother continued to test positive for methamphetamines while the termination case was pending. There was testimony that she has not addressed her substance abuse problems.

K.S. has remained in the same foster home since his removal and is thriving in that home. The foster parents plan to adopt K.S.

We find that the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in the best interest of K.S. We overrule the fifth issue.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to K.S.


STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray concurs in the Court's judgment.  A separate opinion will not issue.)
Affirmed
Opinion delivered and filed August 3, 2022
[CV06]

