

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00131-CV

_____

IN THE INTEREST OF B.F., A CHILD

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-719029-22

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant, B.F.'s alleged father,[1] challenges the trial court's order terminating his parental rights to B.F. In three issues, Appellant argues (1) that the evidence was insufficient to support termination because the trial court allowed inadmissible hearsay testimony to prove that Appellant was the father of B.F.; (2) that the evidence was insufficient to support the conduct grounds for termination under Family Code Subsections 161.001(b)(1)(D), (E), (F), and (M)[2]; and (3) that the trial court erred by admitting evidence—over Appellant's objections—of two of Appellant's criminal convictions, in violation of Rule 403, *see* Tex. R. Evid. 403.

In response, the Texas Department of Family and Protective Services (TDFPS) contends (1) that Appellant's admission of paternity in his request for counsel established his paternity "long before" the complained-of evidence was admitted, and if Appellant withdrew that admission, the evidence would support summary termination; (2) that Appellant has waived any complaint about the sufficiency of the

---

[1]The trial court also terminated the parent–child relationship between B.F. and his mother (Mother), but she did not appeal.

[2]The trial court found grounds under Subsections 161.001(b)(1)(D), (E), and (N). However, Appellant challenges the sufficiency of the evidence as to grounds (D), (E), (F), and (M), and the argument section of his brief addresses only grounds (D) and (E). The trial court also terminated Appellant's rights under Family Code Section 161.002(b), which is applicable to alleged fathers. However, Appellant does not challenge the paternity-related grounds of the trial court's termination order. *See* Tex. Fam. Code Ann. § 161.002(b)(1), (3). Contextually, Appellant appears to be trying to avoid the collateral effects of the Section 161.001(b)(1)(D) and (E) findings. *See In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019).

evidence because he does not challenge the trial court's finding under Subsection 161.001(b)(1)(N) or its best-interest finding under Subsection 161.001(b)(2); and (3) that any danger of unfair prejudice stemming from the admission of Appellant's criminal convictions was minimal or otherwise harmless.

Because we conclude that any error in admitting the complained-of hearsay testimony was harmless, that the evidence was sufficient to support the termination of Appellant's parental rights, and that the trial court did not err in admitting the complained-of exhibits, we affirm the trial court's order terminating Appellant's parental rights to B.F.

## I. Background

TDFPS became involved with B.F.'s family when, on April 29, 2022, Mother tested positive for amphetamines and opiates upon being admitted for delivery. Mother admitted to using heroin and cocaine during the entire pregnancy, and B.F. was born with methamphetamines, amphetamines, and opiates in his system. B.F. began going through withdrawals when he was only a few hours old, and he stayed in the hospital for several weeks.

TDFPS investigator Ashley Hudgins interviewed Mother at the hospital. Mother admitted that she had used heroin the day before giving birth to B.F., that she used heroin multiple times a day, and that she used methamphetamines about once a day. She told Hudgins that she had known she was pregnant. Mother also told Hudgins that she had been living with Appellant—whom Mother identified as B.F.'s

father—prior to giving birth, that she and Appellant did not have a permanent residence, and that she and Appellant had been staying wherever they could find a place. When asked about Appellant's drug use, Mother said that he had last used drugs two months before B.F.'s birth.

After Mother was discharged from the hospital, Hudgins had difficulty contacting her, and she was unable to find Appellant. When Hudgins finally found Mother, she was in jail. Mother disclosed that she had continued using heroin after giving birth to B.F. Mother's ongoing drug use concerned Hudgins because Mother had not been trying to establish a stable environment for B.F.

B.F. was finally discharged from the hospital in June 2022, but he had nowhere to go. TDFPS sought removal and placement for B.F. in foster care for several reasons: Mother and Appellant had not made themselves available to TDFPS, Mother and Appellant could not establish a safe residence, TDFPS was unable to place B.F. with a family member or close family friend, and there were still concerns about Mother's and Appellant's ongoing drug use.

After B.F.'s removal, an OCOK[3] permanency specialist, Ashley Tower, attempted to provide case management services for B.F.'s family. When Tower first met with Mother on August 19, 2022, Tower observed that Mother appeared paranoid, skittish, and nervous, which led Tower to believe that Mother was using

---

[3]Our Community Our Kids (OCOK) acts as TDFPS's agent in providing case management services for children removed from their parents' care.

drugs. Mother admitted that she was still using heroin. Tower was unable to contact Appellant.

Tower next met with Mother on January 27, 2023, which was also the first and only time she met with Appellant. Mother and Appellant had been staying at a motel and were seen carrying their clothing in a push stroller and a backpack. When Tower asked Mother and Appellant how they were surviving daily and obtaining food and shelter, they stated that they panhandled on the corner. When asked about illegal drug use, Mother denied using methamphetamines or heroin, and Appellant admitted to using only marijuana. This interaction concerned Tower for two reasons: first, Mother and Appellant were unable to provide a safe and sober environment for B.F., and second, they were not taking any steps to become better parents. Despite her efforts to reach Mother and Appellant, Tower was unable to set up a meeting with them after the January 27, 2023 meeting.

At the termination trial, at which neither Mother nor Appellant appeared, Tower testified that Mother and Appellant had not demonstrated that they could provide B.F. with a safe and stable environment. Specifically, Mother and Appellant were homeless, and they had not addressed any of TDFPS's concerns to mitigate the risk of abuse, neglect, or injury of B.F. Tower also testified that, although she had attempted to engage Mother and Appellant in a service plan and encouraged them to visit with B.F., they were not responsive to her efforts. With respect to Appellant, he had not visited or seen B.F. since B.F. was in the hospital in June 2022, despite

Tower's sending photos of B.F., offering to set up visits and pay for transportation, sending a service plan, and encouraging Appellant to participate in his services. At the time of trial Appellant had not started any services. Tower opined that it was in B.F.'s best interest to terminate Appellant's parental rights because, in addition to his criminal history, drug use, and lack of parenting skills, Appellant had not addressed TDFPS's concerns or shown that he could provide B.F. with a safe and stable environment.

The trial court found that termination of the parent–child relationship between B.F. and Appellant was in B.F.'s best interest[4] and terminated Appellant's parental rights pursuant to Family Code Subsections 161.001(b)(1)(D), (E), and (N), and Section 161.002(b). *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (N), 161.002(b)(1), (3). In its termination order, the trial court referred to Appellant as B.F.'s "alleged" father and found that Appellant did not timely file an admission of paternity or file a counterclaim for paternity and that Appellant had not registered with the paternity registry under Chapter 160. Despite having referred to Appellant as B.F.'s "alleged" father and despite its Section 161.002(b) findings, the trial court also treated Appellant as B.F.'s proven father and terminated the parent–child relationship based on findings of best interest, endangerment, and constructive abandonment. *See id.* § 161.001(b)(1)(D), (E), (N), (b)(2). This appeal followed.

---

[4]Appellant does not challenge the trial court's best-interest finding on appeal.

## II. Hearsay Testimony on Appellant's Alleged Paternity

Appellant argues that the portion of Hudgins's testimony in which she repeated Mother's statements identifying Appellant as the father of B.F. was inadmissible hearsay. According to Appellant, the testimony allowed TDFPS to establish that he was B.F.'s father because he had not otherwise made an admission of paternity. He contends that without the complained-of testimony, the trial court could not have terminated his parental rights. In other words, Appellant argues that a prerequisite to terminating his parental rights is establishing that he had parental rights and that without the complained-of testimony, TDFPS failed to show that he had any parental rights to terminate; thus, termination was improper.

### A. Standard of Review

We review a trial court's admission of challenged evidence for an abuse of discretion. *In re D.D.*, No. 02-17-00368-CV, 2018 WL 1630708, at *12 (Tex. App.—Fort Worth Apr. 5, 2018, no pet.) (per curiam) (mem. op.) (citing *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015)). Indeed, whether to admit or exclude evidence is within the trial court's sole discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if it acts arbitrarily or unreasonably. *D.D.*, 2018 WL 1630708, at *12 (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). We must uphold the trial court's evidentiary ruling if the record shows any legitimate basis for the ruling. *See Owens-Corning Fiberglas Corp. v. Malone*, 972

7

S.W.2d 35, 43 (Tex. 1998). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

We will not reverse a trial court's judgment because of an erroneous evidentiary ruling unless the ruling probably, though not necessarily, caused the rendition of an improper judgment. *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012). We examine the entire record in determining harm. *Gunn*, 554 S.W.3d at 668; *U-Haul Int'l, Inc.*, 380 S.W.3d at 136. The complaining party must usually show that the whole case turned on the evidence at issue. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (op. on reh'g). Thus, an erroneous admission of evidence is harmless if it is merely cumulative. *In re K.R.G.*, No. 02-12-00384-CV, 2013 WL 3179498, at *3 (Tex. App.—Fort Worth Mar. 21, 2013, pets. denied) (mem. op.) (citing *In re C.R.*, 263 S.W.3d 368, 370–71 (Tex. App.—Dallas 2008, no pet.)).

## B. Analysis

Without having to reach a determination of whether the trial court erred by admitting the complained-of testimony, we conclude that any error in admitting the testimony was harmless.

First, the termination of Appellant's parental rights did not turn on Hudgins's testimony repeating Mother's statement that Appellant was B.F.'s father. Appellant

8

had already admitted that he was B.F.'s father by filing with the trial court a "Request for Counsel/Affidavit of Indigence" in which he declared, "I, [Appellant], am a parent of the child[] named above" and signed his name as "Respondent Parent."

Second, Appellant's rights (parental or otherwise) would have been terminated with or without the admission of the complained-of testimony because the trial court double-dipped its termination order by terminating under both Section 161.001(b) (conduct grounds) and Section 161.002(b) (paternity-related grounds).[5]

### 1. Termination under Section 161.002(b)

Even if the trial court had excluded the complained-of testimony, Appellant's rights would have been terminated pursuant to Section 161.002(b).

Under Section 161.002(b)(1), "[t]he rights of an alleged father may be terminated if[,] . . . after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity." Tex. Fam. Code Ann. § 161.002(b)(1). However, if the alleged father files an admission of paternity, TDFPS must then prove one of the grounds for termination under Section 161.001(b)(1) before his parental rights can be terminated. *In re J.L.A.*, No. 04-13-00857-CV, 2014 WL 1831097, at *2 (Tex. App.—San Antonio May 7, 2014, no pet.) (mem. op.); *Toliver v. Tex. Dep't of Fam. & Protective Servs.*, 217 S.W.3d 85, 104 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *In re K.W.*, 138 S.W.3d 420, 430 (Tex. App.—Fort Worth 2004,

---

[5]The question of whether we agree with this tactic is not an issue currently before this court.

pet. denied); *Phillips v. Texas Dep't of Protective & Regul. Servs.*, 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.).

Appellant ostensibly argues that the complained-of testimony was the only evidence of his paternity, and by establishing his paternity, the trial court was able to terminate his parental rights under Section 161.001(b). But this argument does not account for the trial court's findings pursuant to Section 161.002(b), which provides an independent basis for termination and which Appellant does not challenge on appeal.[6] By Appellant's hypothetical, "[i]f the hearsay statements were not allowed

---

[6]In appeals challenging Section 161.002(b) findings, we have held that when an alleged father filed a request for counsel swearing that he was "a parent of the child/ren named above"—as Appellant did here—and his appointed trial counsel appeared on his behalf, as counsel did here, the trial court erred by terminating the parent–child relationship under Section 161.002(b). *See In re Y.W.*, No. 02-22-00334-CV, 2022 WL 17841830, at *4 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op.); *In re K.E.S.*, No. 02-11-00420-CV, 2012 WL 4121127, at *3 (Tex. App.—Fort Worth Sept. 20, 2012, pet. denied) (mem. op. on reh'g). But when, as here, the alleged father does not challenge a termination order based on Section 161.002(b) findings, our holding depends on the particular facts of the case.

We have declined to affirm a termination order based on unchallenged Section 161.002(b) findings when the alleged father signed a request for counsel swearing to be the child's parent, appeared at the termination trial, and unequivocally testified that he was the child's father and that he did not want his rights to be terminated. *See In re A.R.F.*, No. 02-13-00086-CV, 2013 WL 3874769, at *13 (Tex. App.—Fort Worth July 25, 2013, no pet.) (mem. op.); *In re D.B.*, No. 02-07-00428-CV, 2008 WL 2553343, at *7 (Tex. App.—Fort Worth June 26, 2008, no pet.) (mem. op.). Based on those facts and in the interest of justice, we proceeded to analyze the sufficiency of the evidence to support the trial court's Section 161.001(b) findings.

We have affirmed a termination order on unchallenged Section 161.002(b) findings when, as here, the alleged father did not appear at the termination trial, did not unequivocally testify that he was the child's father and that he did not want his

into evidence, the trial court could not have found that Appellant was the father of [B.F.]," and the termination of his parent–child relationship with B.F. would fall squarely under Section 161.002(b). Appellant therefore cannot show that the termination of his parental rights turned on the complained-of testimony or that the complained-of testimony caused the rendition of the trial court's termination order.

### 2. Termination under Subsection 161.001(b)(1)(E)

If the hearsay testimony was properly allowed into evidence—and assuming that the testimony alone sufficiently established Appellant's paternity, as Appellant suggests—then the trial court properly terminated Appellant's parental rights pursuant to Section 161.001(b).

#### i. Standard of Review

For a trial court to terminate a parent–child relationship, TDFPS must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind

rights to be terminated, and did not make any effort to establish his interest in a relationship with the child before the termination of his parental rights. *See In re D.T.*, No. 02-13-00331-CV, 2014 WL 261408, at \*2–3 (Tex. App.—Fort Worth Jan. 23, 2014, no pet.) (mem. op.). Here, not only did Appellant not appear at his termination trial or make any effort to establish that he wanted a relationship with B.F., he also now claims on appeal that he made no admission of paternity and that the evidence establishing his paternity—the complained-of testimony, according to Appellant—was wrongly admitted. Based on these facts, we would end our analysis here if it were independent from our harm analysis.

of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences, but they must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). Here, we review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that TDFPS

proved the specific grounds for termination under Family Code Section 161.001(b)(1)(E). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *Id.* at 18–19.

### ii. Applicable Law

Under Subsection (E), the trial court may terminate a parent's rights if it finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "'[E]ndanger' means to expose to loss or injury" or "to jeopardize." *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).

The relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See id.*; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Termination under Subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The endangering conduct need not be directed at the child, nor must the child actually suffer injury. *J.F.-G.*, 627 S.W.3d at 312 (quoting *Boyd*, 727 S.W.2d at 533). The specific danger to a child's well-being may be inferred from parental misconduct

standing alone. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child.").

Illegal drug use and its effect on the parent's life and his ability to parent may establish an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied); *R.W.*, 129 S.W.3d at 739; *J.T.G.*, 121 S.W.3d at 125–26. And "[a] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re J.A.G.*, No. 02-10-00002-CV, 2010 WL 4539442, at *1 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op.); *see In re I.L.*, No. 02-18-00206-CV, 2018 WL 5668813, at *5 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.). Additionally, evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being. *I.L.*, 2018 WL 5668813, at *5; *In re A.N.D.*, No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.); *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g) (en banc).

### iii. Analysis

The record indicates that Appellant knew of Mother's drug use during her pregnancy with B.F. and failed to attempt to protect B.F. from the effects of that drug

use. *See In re J.W.*, 645 S.W.3d 726, 749–50 (Tex. 2022) (citing *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (affirming Subsection (E) finding where the father had been aware of the mother's drug use during pregnancy and the effects it could have on the child's well-being, and he neither reported her to the Department or the police nor made an effort to ensure that she received substance-abuse treatment)). B.F. was hospitalized immediately after his birth, and he was removed and placed with an unrelated foster family upon his discharge from the hospital. *See id.* at 749 (similar facts). Mother admitted to using heroin and cocaine during her pregnancy with B.F., including the day before she gave birth. On the date of B.F.'s birth, Mother tested positive for amphetamines and opiates. She disclosed that she had been living with Appellant prior to giving birth, that she and Appellant did not have a permanent residence, and that they had been staying wherever they could find a place. After B.F.'s removal, permanency specialist Tower learned that Mother and Appellant still lived together in a motel and panhandled for their income. And Tower's only means of reaching Appellant was through Mother.

There is also evidence of Appellant's own drug use, including marijuana, methamphetamine, and heroin. Approximately ten months after removal, Appellant admitted to Tower that he was using marijuana. At trial, Hudgins testified that Mother had disclosed to her that Appellant's last drug use had been two months before B.F.

15

was born.[7] The trial court admitted—over Appellant's objection—two exhibits showing that on May 13, 2022, Appellant was convicted in two cases for possession of a controlled substance, namely, methamphetamine and heroin. Those offenses occurred February 22, 2022—approximately two months before B.F. was born on April 29, 2022. Appellant served 90 days in jail for these convictions.

In addition to these two drug convictions, the record demonstrates that Appellant had a history of criminal conduct. In December 2020, Appellant was charged with and later convicted for evading arrest with a previous conviction. In March 2019, Appellant was charged with and later convicted for a terroristic threat of a family member and sentenced to 120 days' confinement. In May 2014, Appellant was charged with and later convicted for deadly conduct/discharge of a firearm and bail jumping/failure to appear. For those offenses, he was sentenced to six years' and two years' confinement, respectively. Appellant's criminal history includes fifteen convictions dating back to December 2000.

Stability and permanence are paramount in the upbringing of children. *M.E.-M.N.*, 342 S.W.3d at 263. The record indicates that Appellant was unable to establish that he had obtained or could obtain a safe and stable home or general living environment for B.F. And the record shows that Appellant could not establish proof of employment.

---

[7]Appellant objected to this testimony as hearsay, which the trial court overruled. On appeal, however, he does not challenge this ruling.

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we hold that there is some evidence of endangering conduct on which a reasonable factfinder could have formed a firm belief or conviction that Appellant had engaged in conduct that endangered B.F.'s physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Accordingly, we overrule Appellant's issue regarding the termination of his parental rights to B.F. under Subsection (E). Because a finding of only one ground alleged under Section 161.001(b)(1) is sufficient to support termination, *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), we need not reach the issue of termination under Subsections 161.001(b)(1)(D) and (N). *See In re A.N.*, No. 02-22-00036-CV, 2022 WL 2071966, at *2 (Tex. App—Fort Worth June 9, 2022, pet. denied) (mem. op.) ("Addressing both (D) and (E) is not necessary, though, unless neither withstands appellate review. Affirming one renders the other moot.").

### 3. Conclusion

Any error in admitting the hearsay testimony on Appellant's alleged paternity was harmless because (1) the termination of Appellant's parental rights did not turn on the testimony and (2) Appellant's rights presumably would have been terminated with or without the testimony under either Section 161.001(b) or Section 161.002(b). And the evidence was sufficient to support the trial court's findings of endangerment pursuant to conduct ground (E). Accordingly, we overrule Appellant's first two issues.

### III. Evidence of Appellant's Criminal Convictions

In his final issue, Appellant argues that the trial court erred by admitting evidence of two of Appellant's drug convictions. He contends that the prejudicial effect of these exhibits outweighed any probative value of the evidence, particularly because Mother's drug use was the reason for TDFPS's involvement with the family.

### A. Standard of Review and Applicable Law

In reviewing Appellant's challenge to the admission of evidence of his criminal convictions, we apply the same standard of review—abuse of discretion—as outlined above in Appellant's first issue. *See supra* pp. 7–8.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Tex. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *6 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.). Because the best interest of the child must always be the primary consideration in a parental-rights termination case, evidence relevant to the best interest of the child will seldom be excluded under Rule 403. *In re B.C.*, No. 02-15-00175-CV, 2015 WL 6081452, at *1 (Tex. App.—Fort Worth Oct. 15,

2015, no pet.) (mem. op.); *Garza v. Garza*, 217 S.W.3d 538, 555 (Tex. App.—San Antonio 2006, no pet.) (stating that Rule 403 is an extraordinary remedy to be used sparingly in parental-rights termination cases).

**B. Analysis**

The complained-of exhibits are two May 13, 2022 judgments of conviction for the offenses of possession of a controlled substance with 90-day sentences of confinement that began on May 26, 2022. Appellant first argues—albeit inaccurately—that the dates of these two offenses predate the date of B.F.'s conception and are therefore irrelevant. But the judgments indicate that the date of the offenses was February 19, 2022—less than two months before B.F. was born, not nine months. Appellant also argues that the probative value of the complained-of exhibits was substantially outweighed by the danger of unfair prejudice, *see* Tex. R. Evid. 403, because the trial court had considered evidence of Mother's drug use and B.F.'s being "born on drugs," and there was no evidence that Appellant had been "involved at that time."

We have held that evidence of a parent's criminal history is relevant when evaluating that parent's parental abilities. *J.B.*, 2018 WL 3289612, at *7 (citing *In re L.M.*, No. 02-16-00127-CV, 2016 WL 5957030, at *15 (Tex. App.—Fort Worth Oct. 13, 2016, pet. denied) (mem. op.)); *see In re S.B.*, 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no pet.) (noting that parent's poor judgment may be considered in determining child's best interest). And contrary to Appellant's assertion, even criminal

19

conduct before the child is born is relevant. *See J.B.*, 2018 WL 3289612, at *7 (citing *Calderon v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-09-00257-CV, 2010 WL 2330372, at *2 n.3 (Tex. App.—Austin June 11, 2010, no pet.) (mem. op.)).

We conclude that it was within the trial court's discretion to find that evidence of Appellant's criminal history was relevant to the issues of B.F.'s best interest and endangerment. *See J.F.-G.*, 627 S.W.3d at 315; *In re S.T.*, No. 11-19-00363-CV, 2020 WL 2610393, at *4 (Tex. App.—Eastland May 18, 2020, pet. denied) (mem. op.); *A.J.M.*, 375 S.W.3d at 606; *J.T.G.*, 121 S.W.3d at 133.

We also conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Although evidence of a parent's criminal history may be prejudicial, under these circumstances, it was not unfairly prejudicial. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (holding evidence "is not inadmissible on the sole ground that it is 'prejudicial' because in our adversarial system, much of a proponent's evidence is legitimately intended to wound the opponent"); *In re A.M.*, No. 09-19-00075-CV, 2019 WL 4064579, at *15 (Tex. App.—Beaumont Aug. 29, 2019, pet. denied) (mem. op.) (similar); *In re J.W.*, 113 S.W.3d 605, 612 (Tex. App.—Dallas 2003, pet. denied) (similar). Appellant has not demonstrated, and the record does not show, that the admission of the two judgments of conviction *unfairly* prejudiced him. *See Murray v. Tex. Dep't of Fam. & Protective Servs.*, 294 S.W.3d 360, 369 (Tex. App.—Austin 2009, no pet.). Appellant's conclusory argument that the trial court erred by admitting the

evidence is thus insufficient to overcome the presumption of inadmissibility under Rule 403. We overrule Appellant's final issue.

## IV. Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's order terminating his parental rights to B.F.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 31, 2023